UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEITH BYRON BARANSKI, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:11-CV-123 CAS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This coram nobis matter is before the Court on petitioner Keith Byron Baranski's Motion to Release Pre-Trial Services and U.S. Probation Office Records of James M. Carmi. Baranski seeks the limited, non-public release of:

> any document in the custody of Pretrial Services and the United States Probation Office located in St. Louis, Missouri concerning: 1) an agreement by James M. Carmi to cooperate with the government; 2) a reduction in sentence for Carmi pursuant to U.S.S.G. § 5K1.1 or Rule 35; 3) perjury by Carmi; 4) suborning of perjury by Carmi; and 5) employment, potential employment, or attempted employment of Carmi by the United States as a confidential informant. This motion includes documents prepared by, and sent to, Susan McGuire, William Brown, or any other therapist. Carmi has signed DOJ Form 361 (Certification of Identity) authorizing the release to Baranski and [his] counsel of Carmi's Pre-Trial Services and U.S. Probation Offices records.

Mot. to Release at 1.

**Background**

Baranski was convicted of conspiracy to defraud the United States in connection with false statements made on Bureau of Alcohol, Tobacco and Firearms ("ATF") forms related to imported machine guns. United States v. Baranski, 4:02-CR-361 CAS (E.D. Mo.). Baranski was sentenced to 60 months, and has served his time and is no longer on supervised release.

James Carmi was the government's key witness against Baranski at trial. In Carmi's criminal case based on the same conduct, the government filed a United States Sentencing Guidelines § 5K1.1 motion in return for Carmi providing information against Baranski, and Carmi received a substantial sentence reduction. United States v. Carmi, 4:01-CR-91 ERW (E.D. Mo.). At Baranski's trial, Carmi was asked on cross-examination if he expected that he was going to get "another deal for actually testifying" against Baranski. Carmi responded, "I never said that, and I never expected it. I've never been promised anything. And as a matter of fact, I've never asked for anything except to be moved from Ste. Genevieve to St. Louis County so I could be closer for the phone bills. It would be $3 instead of $10. And that's all I've ever asked for this whole time." (Trial Tr., Vol. II at 91).

Baranski asserts that Carmi's above-quoted testimony was perjury, because the government had promised Carmi a further sentence reduction under Federal Rule of Criminal Procedure 35 in return for his testimony. The basis of Baranski's petition for writ of coram nobis is that the government failed to correct Carmi's perjury when it did not disclose to the Court that his testimony about the Rule 35 motion was false, and as a result Baranski's conviction and the judgment of forfeiture must be vacated under Napue v. Illinois, 360 U.S. 264, 269 (1959), and Giglio v. United States, 405 U.S. 150, 153-54 (1972).

**Evidentiary Basis for Motion**

Baranski's motion states that in the discovery completed thus far, he has obtained from Carmi's former counsel, the firm of Rosenblum, Schwartz, Rogers & Glass, P. C., copies of letters from Carmi to attorneys John Rogers and Scott Rosenblum, and from John Rogers and Scott Rosenblum to Carmi. Baranski has also obtained the transcript of Carmi's sentencing on November

8, 2001 in Case No. 4:01-CR-91 ERW before U.S. District Judge E. Richard Webber. On the record, in the presence of former Assistant United States Attorney ("AUSA") Richard Poehling and attorney John Rogers, Judge Webber stated to Mr. Carmi,

> THE COURT: Mr. Poehling has filed, with your attorney's knowledge, a 5K1.1 motion, which will permit me to sentence you at something less than the United States sentencing guidelines.
>
> We have conducted a rather intensive conference in chambers and I'm convinced that based upon your unusual efforts in this case, that I should sentence you at substantially less under the 5K1.1 motion than I customarily would do. In this case, it's my intention to sentence you at 42 months.
>
> I have – it's been represented to me that depending on certain circumstances that happen hereafter, which you and counsel can discuss, that there's a likelihood that a further reduction at some time in the future, depending upon your continued cooperation, may occur.
>
> Do we need to say anything else about that at this time?"
>
> MR. ROGERS: No, sir.
>
> MR. POEHLING: No, Your Honor.

Sent. Tr. at 7 (Case No. 4:01-CR-91 ERW).

Baranski asserts that the letters from Carmi to his counsel remind them that he was informed on the day of his sentencing (November 8, 2001) that if he continued to cooperate and assist the government, he would receive a significant reduction in his 42-month sentence pursuant to a Rule 35 motion. Baranski asserts that the letters to Carmi show that Carmi was informed he had been promised a sentence reduction, via a Rule 35 motion, from then-AUSA Poehling, by and through both Scott Rosenblum and John Rogers, beginning at least in November 2001, prior to testifying before the grand jury against Baranski. Baranski also states that Carmi has admitted that he lied at Baranski's trial regarding a Rule 35 motion.

3

Baranski states that Scott Rosenblum, former co-counsel for Carmi, testified at deposition on December 6, 2012 that he had discussions with former AUSA Poehling concerning Carmi and a Rule 35 motion and that Poehling was going to recommend a Rule 35 motion for Carmi. Rosenblum also testified that Carmi was untruthful in his testimony pertaining to additional facts at Baranski's trial. John Rogers, also former co-counsel for Carmi, testified at deposition on December 6, 2012 that as early as November 2001, Poehling had promised that the government would file a Rule 35 motion for Carmi, conditioned on Carmi's continued cooperation against Baranski.

Baranski's motion also states that former AUSA Poehling testified at deposition on December 6, 2012 that he never offered to Scott Rosenblum, John Rogers or James Carmi, either expressly or impliedly, a Rule 35 reduction in Carmi's sentence in exchange for his ongoing cooperation. Poehling also testified that between October 17, 2000, the day Carmi was arrested, and November 18, 2002, the final day of Baranski's trial, he had no discussions with anyone regarding the possibility of James Carmi receiving a Rule 35 motion, and that Carmi was never offered a Rule 35.

**Discussion**

Baranski acknowledges that the records he seeks are the property of the Court, that the release of such records is disfavored, and that non-disclosure of such records to third parties is favored in the absence of a compelling demonstration that their disclosure is required to meet the ends of justice. Baranski argues that there exists a compelling justification for the release of the records in this case, and that the ends of justice will be met by the release.

Baranski asserts that based on discovery conducted thus far, it is clear there is conflicting evidence concerning a promise made to Carmi by the government, and because the promise of a Rule 35 motion would directly contradict Carmi's trial testimony, documents in the U.S. Pretrial Services Office and U.S. Probation Office records may assist in clarifying whether Carmi committed perjury at Baranski's trial concerning a Rule 35 motion. Baranski asserts that the records should enable him to determine if and when Carmi had been promised a reduction in sentence through a Rule 35 motion, and who knew about it. Baranski also asserts that the records should enable him to confirm whether Carmi worked, or was soliciting to work, as a confidential informant for ATF and received compensation from ATF, which may contradict his denial at trial that he ever asked for anything from ATF.

Baranski contends that based on the foregoing, he satisfies the "compelling, particularized need" requirement for disclosure articulated in cases such as <u>United States v. Corbitt</u>, 879 F.2d 224, 239 (7th Cir. 1989). Baranski states that he is unable to obtain the documents he seeks from the U.S. Attorney's Office, or from any source other than the U.S. Pretrial and Probation Offices, as the U.S. Attorney's Office has informed him it does not have the documents. Finally, Baranski notes that Carmi has voluntarily waived any and all privacy rights and interests in these documents,

The government's Response does not dispute that Baranski has made a showing of compelling, particularized need for the records, or contest the evidentiary basis for the motion. The government does note that James Carmi was convicted in this District on two separate, unrelated criminal matters, No. 4:01-CR-91 ERW, and No. 4:09-CR-67 CAS, and as a result has been supervised through the U.S. Probation Office on two separate cases which would have separate files.

5

The government discusses the general rule that pretrial service materials and probation documents are confidential and may not be disclosed except as specifically permitted by statutes, regulations, or order of the court. After discussing the statutes and selected cases concerning the release of information, the government concedes that the "Court clearly has the authority to order the release of the records and materials sought by Petitioner," Response at 9, but urges that any disclosure be made in consideration of the general rules of confidentiality that attach to the materials sought, which are designed to protect the "sanctity of the missions, programs, and information gathered and retained by the Pretrial Services and U.S. Probation Offices," id., as well as the defendant's privacy, the confidentiality of officers in performing their duties, and the confidentiality of third parties who deal with and aid these officers.

The government suggests that the Court could order Pretrial Services and the Probation Office to "conduct a review of records, materials, and files they may possess for information responsive and relevant to the request made by Petitioner should such records exist," id., and if relevant information and records exist, the Court could conduct an *in camera* inspection to determine relevancy and "aid in a determination about whether disclosure is warranted in light of balancing other interests." Id. Baranski did not file a reply memorandum in support of his motion and the time to do so has passed.

Presentence investigation reports are generally considered to be confidential documents and should be disclosed to third parties only under limited circumstances. See United States Dep't of Justice v. Julian, 486 U.S. 1, 12 (1988) ("the courts have typically required some showing of special need before they will allow a third party to obtain a copy of a presentence report"); United States v. McKnight, 771 F.2d 388, 391 (8th Cir. 1985) ("Generally, pre-sentence reports are considered

6

as confidential reports to the court and are not considered public records, except to the extent that they or portions of them are placed on the court record or authorized for disclosure to serve the interests of justice."). A district court has "supervisory powers over its own records and files," Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978), and as a result, the decision whether to release otherwise confidential presentence reports is largely committed to the court's discretion. United States v. Gomez, 323 F.3d 1305, 1308 (11th Cir. 2003) (per curiam); see United States v. Jewell, 614 F.3d 911, 921 (8th Cir. 2010) (district court's decision to provide or deny a criminal defendant access to another person's presentence investigation report is reviewed for abuse of discretion).

Several federal Courts of Appeals have adopted the "compelling need" test for disclosure of presentence investigation reports to third persons, under which a presentence report should not be released unless the third person has shown a "compelling need for disclosure to meet the ends of justice." United States v. Charmer Industries, Inc., 711 F.2d 1164, 1176 (2d Cir. 1983); accord United States v. Huckaby, 43 F.3d 135, 138 (5th Cir. 1995); United States v. Corbitt, 879 F.2d 224, 239 (7th Cir. 1989). The Seventh Circuit has stated that even when this test is met, "the court should limit disclosure to those portions of the report which are directly relevant to the demonstrated need." Corbitt, 879 F.2d at 239.

Neither party has cited any authority with respect to probation office records other than the presentence investigation report. The government asserts, without citation to any authority, that "disclosure has not been extended beyond the [presentence] report, to probation officers' notes and other background materials." Response at 5. The Court finds this unsupported assertion less than persuasive, and concludes that the compelling need test applicable to the presentence report should

7

also apply to other probation materials, as it properly balances the competing interests of confidentiality and the moving party's need to obtain the information to meet the ends of justice.

Pretrial services materials are treated as confidential pursuant to 18 U.S.C. § 3153(c)(1), which states in pertinent part that "information obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the purposes of a bail determination and shall otherwise be confidential." This confidentiality is intended to "protect [ ] the relationship between the pretrial services officer and the particular defendant. Defendants may be reluctant to cooperate with pretrial services officers unless assured of the confidentiality of the information they reveal to the officers. The courts, in turn, would receive only incomplete information." H.R. Conf. Rep. 97–792, at 8 (1982), reprinted in 1982 U.S.C.C.A.N. 2393, 2394. As a result, "a request by a third party for the pretrial services report of a government witness creates a tension between this confidentiality and the government's discovery obligations." United States v. Pena, 227 F.3d 23, 26 (2d Cir. 2000) (Sotomayor, J.).

The parties have not cited and the Court has not found any Eighth Circuit cases discussing the release of pretrial service materials. In Pena, the Second Circuit held that:

> [A]s with presentence reports, when a defendant requests that the government disclose pretrial services materials pursuant to its discovery obligations to provide defense counsel with exculpatory and impeachment information in its possession, district judges should review those materials *in camera* and determine whether they contain such information. If so, and if there is a compelling need for its disclosure, the district court should, to the extent possible, turn over only that portion of the document containing such information.

Id. at 28 (emphasis added). The Court finds this directive to be reasonable and appropriate, and in line with Eighth Circuit precedent in related situations. See, e.g., United States v. Garcia, 562 F.3d 947, 953 (8th Cir. 2009) (district court must conduct an *in camera* review of a coconspirator's

8

presentence report where the government recognizes the possibility that it contains material that is exculpatory or affects the credibility of prosecution witnesses).

In this case, the Court finds that Baranski has made a showing of particularized, compelling need for the records and documents he seeks under the circumstances of this case, based on the evidence discussed above and as more fully set forth in Baranski's motion and memorandum in support. The fact the government does not contest that Baranski has made a showing of particularized, compelling need is significant. The Court also finds that the information Baranski seeks is highly material to the ultimate resolution of this matter, and cannot be obtained from any other source. Because Mr. Carmi has waived his privacy interests in the materials, his interest in maintaining their confidentiality is not a factor in the Court's analysis. For these reasons, the Court concludes the ends of justice require that the records Baranski seeks be produced.

The Court will grant Baranski's motion for release of records from the U.S. Pretrial Services Office and U.S. Probation Office, in the following respects. The Court will order these offices to review their files and provide the records requested by Baranski to the Court ex parte and on a confidential basis, for *in camera* review. The Court will review the records to determine whether they contain information responsive and relevant to Baranski's request, and will then determine what portions of the records, if any, should be disclosed. See Pena, 227 F.3d at 28. In addition, in order to preserve a complete record, the Court will thereafter direct the Clerk to file the documents in their entirety, under seal.

Accordingly,

**IT IS HEREBY ORDERED** that petitioner Baranski's Motion to Release Pre-Trial Services and U.S. Probation Office Records of James M. Carmi is **GRANTED** as set forth herein. [Doc. 94]

**IT IS FURTHER ORDERED** that the U.S. Pretrial Services Office and U.S. Probation Office for the Eastern District of Missouri shall, by **March 6, 2013**, produce and deliver to the chambers of the undersigned all records in their possession related to James M. Carmi that concern, or arguably or potentially may concern:

    1) an agreement by James M. Carmi to cooperate with the government;

    2) a reduction in sentence for Carmi pursuant to U.S.S.G. § 5K1.1 or Rule 35;

    3) perjury by Carmi;

    4) suborning of perjury by Carmi; or

    5) employment, potential employment, or attempted employment of Carmi by the United States as a confidential informant.

The foregoing includes documents prepared by, and sent to, Susan McGuire, William Brown, or any other therapist who has treated Carmi.[1]

**IT IS FURTHER ORDERED** that the Clerk of the Court shall transmit a copy of this Memorandum and Order to the Chief Pretrial Services Officer and the Chief Probation Officer of this Court.

**IT IS FURTHER ORDERED** that the U.S. Pretrial Services Office and U.S. Probation Office may each provide the Court, along with the requested documents, an ex parte written statement detailing any information they believe should be redacted from specific documents if the

---

[1] Petitioner's request does not include drafts of the Presentence Investigation Report or the final PSR, sentencing transcripts, plea agreements or plea hearing transcripts.

Court determines, following *in camera* review, that the documents should be produced. Any such written statement shall include the reasons underlying each proposed redaction.

                                                              **CHARLES A. SHAW**
                                                              **UNITED STATES DISTRICT JUDGE**

Dated this   27th   day of February, 2013.