**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEITH BYRON BARANSKI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:11-CV-123 CAS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the United States' Motion to Dismiss petitioner Keith

Byron Baranski's ("petitioner" or "Mr. Baranski") Second Amended Verified Petition for Writ of

Error Coram Nobis. Mr. Baranski opposes the motion to dismiss and it is fully briefed. In addition,

petitioner filed a motion for leave to file a third amended petition for writ of error coram nobis. For

the following reasons, the government's Motion to Dismiss will be granted in part and denied in

part, and Mr. Baranski's motion for leave to file a third amended petition for writ of error coram

nobis will be granted as set forth in this Memorandum and Order.

## I. Background

Mr. Baranski was convicted of one count of conspiracy to import machine guns illegally by

submitting false entries in forms submitted to the Bureau of Alcohol, Tobacco & Firearms (ATF),

in violation of 18 U.S.C. § 371. The government sought and obtained criminal forfeiture of the

weapons. Mr. Baranski was sentenced to a term of sixty months' imprisonment followed by three

years supervised release. Mr. Baranski appealed his conviction and sentence and the Eighth Circuit

affirmed. United States v. Baranski, 75 F. App'x 566 (8th Cir. 2003) (unpublished per curiam). Mr.

Baranski filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 that

this Court denied. <u>Baranski v. United States</u>, 2006 WL 472451 (E.D. Mo. Feb. 27, 2006). Mr. Baranski appealed, and the Eighth Circuit affirmed. <u>Baranski v. United States</u>, 515 F.3d 857 (8th Cir. 2008). Mr. Baranski's term of supervised release was terminated on August 17, 2009. Mr. Baranski filed a pro se Petition for Writ of Error Coram Nobis on January 18, 2011, and an amended petition through counsel on March 14, 2011 that asserted three counts. Mr. Baranski filed a second Amended Petition for Writ of Error Coram Nobis ("Petition") on May 21, 2014 that asserts ten counts (Doc. 140).

The government moves to dismiss the Petition. The government's motion to dismiss does not indicate the procedural authority on which it is based. The government states in its Reply memorandum that a portion of its motion is filed pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, and the remainder is based on the abuse of the writ doctrine.

## II. Motion to Dismiss for Failure to State a Claim

### A. <u>Legal Standard</u>

On a motion to dismiss, the Court accepts as true the factual allegations contained in the petition and grants the petitioner the benefit of all reasonable inferences that can be drawn from those allegations. <u>See</u> <u>Lustgraaf v. Behrens</u>, 619 F.3d 867, 872-73 (8th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [petitioner] pleads factual content that allows the court to draw the reasonable inference that the [respondent] is liable for the misconduct alleged." Id.

B.  Discussion

The government moves to dismiss the Petition on the basis that Mr. Baranski has failed to allege "present adverse consequences" from his conviction, citing Stewart v. United States, 446 F.2d 42, 43-44 (8th Cir. 1971) and McFadden v. United States, 439 F.2d 285, 287 (8th Cir. 1971).  The government states that although the Eighth Circuit has not stated what type of consequences must be shown to obtain coram nobis relief, other circuits require a showing of something more than simply a criminal conviction.[1]

Mr. Baranski responds that the government has been on notice of the adverse consequences of his conviction since the day this matter was filed, as prior versions of the petition specifically alleged continuing adverse consequences of the conviction, including the inability to vote in federal elections, to be seated on a jury, to own or possess a firearm or ammunition for hunting purposes, to be an executor of an estate, to obtain employment comparable to that held at the time of his

_____

[1]In one case cited by the government, United States v. George, 676 F.3d 254 (1st Cir. 2012), the First Circuit observed that the case law "has been uneven" with respect to the requirement to show adverse consequences from the conviction to obtain coram nobis relief:

> For example, several courts have indicated that something more than the stain of conviction is needed to show continuing collateral consequences.  See, e.g., Fleming v. United States, 146 F.3d 88, 90-91 & n.3 (2d Cir. 1998) (per curiam); United States v. Dyer, 136 F.3d 417, 429-30 & n.33 (5th Cir. 1998); Hager, 993 F.2d at 5; United States v. Osser, 864 F.2d 1056, 1059-60 (3d Cir. 1988); see also United States v. Keane, 852 F.2d 199, 203 (7th Cir. 1988) (holding that continuing collateral consequences arise only in situations where the disability is unique to a criminal conviction).  Other courts have indicated that continuing collateral consequences invariably flow from a felony conviction alone.  See, e.g., United States v. Peter, 310 F.3d 709, 715-16 (11th Cir. 2002) (per curiam); Walgren, 885 F.2d at 1421; United States v. Mandel, 862 F.2d 1067, 1075 & n. 12 (4th Cir. 1988).  Yet another court has granted coram nobis relief without mentioning the requirement.  See Allen v. United States, 867 F.2d 969, 971-72 (6th Cir. 1989).

George, 676 F.3d at 254.

conviction (an importer), and the potential of receiving an enhanced sentence if an additional felony conviction is rendered.  <u>See</u> Petition at 9-10 (Doc. 1); Amended Pet. at 15, ¶ 52 (Doc. 9).  Petitioner concedes that the current Petition omits allegations of continuing adverse consequences, and seeks leave of Court to file a third amended Petition for Writ of Error Coram Nobis to re-allege the continuing adverse consequences.

The Court concludes that Mr. Baranski's prior petitions adequately alleged adverse consequences from his conviction, particularly that as a convicted felon, he can no longer hold his prior employment as an importer of firearms.  The current Petition, however, fails to allege adverse consequences and is therefore deficient in this respect.  Under these circumstances, Mr. Baranski will be granted leave to amend his petition to reallege the adverse consequences of his conviction.  Because the Court concludes that portions of the Petition are not an abuse of the writ, *infra*, it will grant the government's motion to dismiss for failure to state a claim and also grant Mr. Baranski leave to file a third amended petition, in accordance with this Memorandum and Order, to reallege the adverse consequences of his conviction.

## III.  Motion to Dismiss for Abuse of the Writ

The government also moves to dismiss the Petition on the basis that it is an abuse of the writ.  The government asserts that all but one of the issues raised in the Petition could and should have been raised either in Mr. Baranski's direct appeal or his motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, and not in another collateral attack of his conviction filed more than ten years after it occurred.  The government also asserts that one of the issues in the Petition was actually raised and rejected in Mr. Baranski's § 2255 proceeding and as a result cannot be raised again.

A.  Legal Standard

The abuse of the writ doctrine "in general prohibits subsequent habeas consideration of claims not raised, and thus defaulted, in the first federal habeas proceeding."  McCleskey v. Zant, 499 U.S. 467, 490 (1991).  The abuse of the writ doctrine also applies to coram nobis cases.  United States v. Camacho-Bordes, 94 F.3d 1168, 1172-73 (8th Cir. 1996).

"[T]he abuse-of-the-writ doctrine . . . concentrate[s] on a petitioner's acts to determine whether he has a legitimate excuse for failing to raise a claim at the appropriate time."  McCleskey, 499 U.S. at 490.  The Supreme Court held that the "cause" and "prejudice" standard used to determine whether to excuse state procedural defaults is the standard for determining whether there has been an abuse of the writ through inexcusable neglect.  See id. at 490-96.  Where a petitioner files a second or successive petition, "the government bears the burden of pleading abuse of the writ" and does so "if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ."  Id. at 494.  If this initial burden is met, it then shifts to the petitioner to disprove abuse.  Id.  To disprove abuse of the writ, the petitioner must show "cause for failing to raise [the new claim] and prejudice therefrom."  Id.

"'[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim.'"  Id. at 497 (quoting Murray v. Carrier, 477 U.S. 478, 492 (1986)).  The fact that a petitioner did not possess or could not reasonably have obtained certain evidence fails to establish cause if other known or discoverable evidence could have supported the claim in any event.  Id.  The abuse of the writ doctrine "examines *petitioner's* conduct: the question is whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process."  Id. at 498.

"The requirement of cause in the abuse-of-the-writ context is based on the principle that petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition." McCleskey, 499 U.S. at 498. "If what petitioner knows or could discover upon reasonable investigation supports a claim for relief in a federal habeas petition, what he does not know is irrelevant. Omission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim." Id. at 497-98.

To establish prejudice, "The habeas petitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Carrier, 477 U.S. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). Petitioner must show "'there is a reasonable probability' that the result of his trial would have been different" if the government's promise to Carmi of a Rule 35 sentence reduction in return for his testimony had been disclosed to the defense. See Strickler v. Greene, 527 U.S. 263, 289 (1999). Thus, the Court must consider whether the impeachment information "'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Id. at 290 (quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995)).

If a petitioner cannot show cause, his failure to raise the claim earlier may still be excused if he can show that a "fundamental miscarriage of justice" would result from a failure to entertain the claim. McCleskey, 499 U.S. at 494-95.

B. Petitioner's Writ History

The government states that petitioner asserted the following claims on the direct appeal of his conviction:

(1) a challenge to the denial of his motion to suppress the results of a search warrant (372 machine guns) for lack of particularity.

(2) a challenge to sufficiency of evidence to support conviction for conspiracy to illegally import machine guns.

(3) prosecutorial misconduct based on numerous instances of allegedly improper cross-examination and closing argument.

(4) a challenge to the criminal forfeiture of weapons and accessories.[2]

The government states that petitioner asserted the following claims in his § 2255 motion to vacate:

(1) a challenge to the denial of his motion to suppress the results of a search warrant (372 machine guns) based on Supreme Court's subsequent decision in Groh v. Ramirez, 540 U.S. 551 (2004), which held that the Fourth Amendment requires particularity in the warrant, not the supporting documents, and that the Leon[3] good faith exception does not apply.

(2) forfeiture of the 372 machine guns must be set aside because the exclusionary rule applies to forfeiture proceedings also.

(3) ATF Special Agent Johnson testified that he had never seen a law enforcement agency use a .50 caliber weapon even though the government's own filings belie this, and falsely testified that the Geneva Convention prohibited .50 caliber ammunition use against personnel; so the government knew or should have known that Agent Johnson presented false evidence and had a duty under Napue v. Illinois, 360 U.S. 264 (1959), to correct it.

C. Discussion

The government has met its initial burden as it has described petitioner's prior writ history,

identified all but one of petitioner's claims as being new, and alleged that petitioner's coram nobis

petition constitutes abuse of the writ. The Court applies the principles articulated in McCleskey to

determine whether petitioner can meet his burden to show cause and prejudice or a fundamental

miscarriage of justice with respect to each of the claims asserted in his Petition.

---

[2]The government incorrectly asserts that Baranski's direct appeal included a claim that it was error to admit the testimony of ATF Special Agent Michael Johnson. See Mot. to Dismiss at 6. On direct appeal, Baranski only challenged Agent Johnson's statements in the affidavit supporting the search warrant.

[3]United States v. Leon, 468 U.S. 897 (1984).

1.  <u>The Government Promised Carmi a Further Reduction in His Sentence Under Rule</u>
    <u>35(b) but Deliberately Withheld that Information</u>.

In Count I, petitioner asserts that the government promised James Carmi, the key witness

against him at trial, a reduction in his sentence pursuant to Rule 35 of the Federal Rules of Criminal

Procedure in return for his testimony against petitioner, but when Carmi was asked on cross-

examination whether he expected to receive a Rule 35 reduction or other consideration in exchange

for his testimony, he lied and denied that any such promises had been made. Petitioner asserts that

the government was fully aware of Carmi's untruthfulness and coached him to deny the existence

of a promise for a Rule 35 sentence reduction, and wilfully and deliberately withheld this

exculpatory and impeachment material from defense counsel.

Petitioner asserts as cause for his failure to raise this claim in his § 2255 motion to vacate

that the factual basis for it was not reasonably available, because petitioner did not learn that the

government actually promised Carmi a Rule 35 reduction in return for his testimony, as opposed to

merely speculating about such a promise, until January 19, 2010. On that date, a DEA agent gave

petitioner a copy of a letter from Carmi's attorney, John Rogers, to Carmi dated February 17, 2003,

that concerned Carmi's testimony at Baranski's trial. The letter stated the U.S. Attorney's Office

had taken the position that Carmi would not receive a Rule 35 reduction unless he provided new

information, as one Assistant U.S. Attorney denied promising a Rule 35 reduction, and the other

stated that even if a Rule 35 had been promised, Carmi was not entitled to it because he "lied when

being questioned about this very issue at trial." <u>See</u> Doc. 1, Ex. 1. Mr. Rogers stated that he had

reviewed the trial transcript "and it certainly did appear you were not being truthful when you denied

knowledge of Rule 35." <u>Id.</u> Petitioner asserts that the government's failure to disclose Carmi's false

testimony is an objective factor external to the defense that interfered with his ability to raise this

claim.

The government argues that because Baranski's attorney asked Carmi on cross-examination whether he was expecting a Rule 35 sentence reduction, Baranski was clearly aware of the issue and there was no reason he should not have included a claim as to a potential Rule 35 motion in his § 2255 motion to vacate sentence.

The Court concludes that petitioner has shown cause with respect to the claim in Count I. Carmi had already been sentenced well below the applicable sentencing guidelines range when he testified at Baranski's trial. Under those circumstances, it was standard trial strategy for Baranski's attorney to ask whether Carmi expected to receive a Rule 35 reduction or anything else in return for his testimony, in order to impeach and discredit Carmi's credibility as a witness. Under oath, Carmi denied that any promise – for a Rule 35 reduction or otherwise – had been made to him in return for his testimony. Petitioner asserts that he relied on Carmi's testimony as being truthful and had no evidence upon which he could have raised this claim in his direct appeal or § 2255 motion. Mr. Baranski also asserts that the information could not have been discovered sooner, in part because it was protected by Carmi's attorney-client privilege, which Carmi did not waive until years later.

There is no indication Mr. Baranski had any known or discoverable evidence that could have supported the claim in Count I before he obtained the letter from Carmi's attorney discussing a promised Rule 35 reduction in return for Carmi's testimony. Mr. Baranski obtained the letter well after his § 2255 motion was denied, so he could not have raised the claim in that proceeding. The Court finds this is a showing of cause, which is bolstered by petitioner's allegations that the government failed to disclose its promise to Carmi of a Rule 35 reduction, coached Carmi to lie about the promise of a Rule 35, and did not bring the false testimony to the Court's attention.

Petitioner asserts that he shows actual prejudice because Carmi was the only material witness against him, and therefore any evidence that impeaches and discredits Carmi's testimony is material because Carmi's credibility is the difference between guilt or innocence for petitioner.

The Court concludes that petitioner has shown actual prejudice, as his description of the importance of Carmi's testimony to his conviction is accurate. The government's case was weak and depended almost entirely on Carmi's testimony. Without it there could have been no indictment and no evidence sufficient to bring the case before a jury. Carmi's credibility was therefore an important issue in the case, and any evidence of a promise for a sentence reduction in return for Carmi's testimony would be highly relevant to his credibility and the jury was entitled to know about it. See Giglio v. United States, 405 U.S. 150, 154 (1972) (when the "reliability of a given witness may well be determinative of guilt or innocence," nondisclosure of evidence affecting credibility falls within the rule that suppression of material evidence justifies a new trial regardless of the good or bad faith of the prosecution) (quoted case omitted)). If petitioner's allegations in Count I are true, they are sufficient to undermine confidence in the jury's guilty verdict as there is a reasonable probability the result of the trial would have been different if this information had been disclosed.

For these reasons, the Court finds that petitioner has shown cause and prejudice with respect to Count I and concludes it is not an abuse of the writ. This aspect of the government's motion to dismiss for abuse of the writ will be denied.

2. The Government Was Fully Aware of the Extent of Carmi's Memory Impairment and Deliberately Withheld Records Supporting Carmi's Amnesia and Memory Loss.

In Count II, petitioner asserts that Carmi suffered a moderate to severe brain injury in a motorcycle accident that resulted in amnesia and significant memory impairment such that Carmi

could not remember most of past events, particularly those pertaining to petitioner. Petitioner alleges that the government was fully aware of Carmi's condition and memory impairment; that ATF Agent Johnson showed Carmi various documents and repeatedly coached and corrected Carmi, although Carmi told the agent he had brain damage and amnesia and was not clear as to what actually happened; the government prepared Carmi for trial by coaching him to downplay his memory impairment and "spoon fed" him with information purported to be the past factual events he could not remember in order to program his testimony; and the government deliberately withheld exculpatory and impeachment material from the defense concerning Carmi's brain injury and the extent of his memory impairment, rendering petitioner's trial counsel ineffective.

Petitioner asserts as cause for his failure to raise this claim in his § 2255 motion to vacate that the factual basis for it was not reasonably available to counsel, because he did not have credible evidence of the extent of Carmi's brain injury and memory impairment when he filed the motion to vacate, and only learned the extent of Carmi's memory impairment after filing the instant coram nobis petition and obtaining Carmi's statements and access to his medical records.

The government argues that petitioner could have raised this issue in his § 2255 motion, because his counsel was aware of issues regarding Carmi's mental health at trial. The government states that petitioner's attorney filed a pretrial motion to determine whether Carmi was competent to testify, resulting in a Report and Recommendation of United States Magistrate Judge that contained an extensive discussion concerning Carmi's mental health. The government states that at trial, Baranski's counsel told the Court that the government knew Carmi was in the hospital in a coma on May 15; asked Carmi on cross examination whether he told doctors in federal prison that he had severe memory loss (to which Carmi responded that he told doctors he had memory loss, but it was not bad enough for him to know that he was not guilty of what he had been arrested for); and

asked Carmi to read from a letter he wrote to ATF Agent Johnson in which Carmi said, "My brain damage makes it hard to remember events from around or before my accident."

The Court concludes that the claim in Count II is an abuse of the writ because petitioner had a sufficient factual basis to include this claim in his § 2255 motion and pursue the matter through the habeas process, for the reasons stated by the government. Although petitioner asserts that he only later learned the government failed to disclose the full extent of Carmi's brain injury, coached his testimony and told Carmi to lie about the extent of his injury, which certainly strengthens his claim, its omission from the § 2255 motion is "not to be excused merely because evidence discovered later might also have supported or strengthened the claim." McCleskey, 499 U.S. at 497-98. Any concealment by the government would not have precluded petitioner from having knowledge of sufficient facts to put him on notice to raise this claim in his § 2255 motion.

Having determined that petitioner fails to show cause, it must be determined whether he has a claim of actual innocence which, if established, would allow the Court to address the merits of this claim. Under Carrier, a petitioner must "show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent'" to satisfy the "fundamental miscarriage of justice" exception to procedural default. Schlup v. Delo, 513 U.S. 298, 327 (1995) (quoting Carrier, 477 U.S. at 496). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. "Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 329.

Here, as stated previously, the government's case rested almost entirely on Carmi's testimony. If petitioner's allegations are true, that (1) Carmi could not remember most of past

events, particularly those pertaining to petitioner, (2) the government was fully aware of Carmi's condition and memory impairment, (3) ATF Agent Johnson showed Carmi various documents and repeatedly coached and corrected Carmi as to events and his testimony, although Carmi told the agent he had brain damage and amnesia and was not clear as to what actually happened, (4) the government prepared Carmi for trial by coaching him to downplay his memory impairment and "spoon fed" him with information purported to be the past factual events he could not remember in order to program his testimony, and (5) the government deliberately withheld exculpatory and impeachment material from the defense concerning Carmi's brain injury and the extent of his memory loss; and if this information had been available to impeach Carmi's testimony, considering the dearth of other evidence against petitioner, the Court finds that no juror, acting reasonably, would have voted to find Mr. Baranski guilty beyond a reasonable doubt.

For these reasons, the Court finds that petitioner has shown actual innocence with respect to Count II and therefore it is not an abuse of the writ. This aspect of the government's motion to dismiss for abuse of the writ will be denied.

3. <u>The Government Seized Baranski's Property Based on an Affidavit Containing Untruthful Statements</u>.

In Count III, petitioner asserts that in April 2001, ATF Agent Johnson prepared a sworn affidavit based on statements Carmi made in March 2001, although Johnson knew that Carmi's memory was impaired and he could not remember most if not all of his interactions with Baranski, and therefore Johnson knew Carmi's statements were not reliable. Petitioner also alleges that Carmi told Johnson and the government he was not certain about the events Johnson cited in the affidavit, and Johnson repeatedly showed Carmi documents and coached and corrected his testimony. Petitioner alleges that although Johnson knew or should have known Carmi's statements were not

reliable and/or were false, he nonetheless presented his affidavit to a U.S. Magistrate Judge and obtained a warrant used to seize petitioner's property.

Petitioner asserts as cause for his failure to raise this claim in his § 2255 motion that the factual basis for the claim was not reasonably available to counsel, because he did not have credible evidence of the extent of Carmi's brain injury and memory impairment when he filed the motion to vacate, and only learned the extent of Carmi's memory impairment after filing the instant coram nobis petition and obtaining Carmi's statements and access to his medical records.

The government asserts that Count III is an abuse of the writ because Baranski was aware of Carmi's memory problems at trial, and made claims regarding the issuance of the search warrant both on direct appeal and in his § 2255 motion to vacate. The government contends there is no reason why petitioner could not have included allegations regarding Carmi's alleged memory impairment in either his direct appeal or motion to vacate.

The Court concludes that the claim in Count III is an abuse of the writ because petitioner had a sufficient factual basis to include the claim in his § 2255 motion and pursue the matter through the habeas process. As discussed above with respect to Count II, petitioner had significant information concerning Carmi's brain injury and memory problems prior to trial, and petitioner challenged the search warrant on direct appeal and in his § 2255 motion, though on different grounds. Although petitioner asserts that he only later learned the extent of Carmi's mental impairment, the omission of this claim in the §2255 motion is "not be excused merely because evidence discovered later might also have supported or strengthened the claim." McCleskey, 499 U.S. at 497-98. The Court further concludes that petitioner has not met the actual innocence standard with respect to this claim.

The government's motion to dismiss Count III for abuse of the writ will be granted.

4. <u>The Government Deliberately Withheld Exculpatory and Impeachment Material</u>.

In Count IV, petitioner asserts that the government deliberately withheld "voluminous amounts of exculpatory and impeachment material from Baranski's defense counsel prior to, during, and after the trial, in order to render them ineffective."  Pet. at 24.  Petitioner asserts that the withheld materials would have aided his counsel to effectively impeach Carmi's credibility, impeach ATF Agent Johnson, challenge and discredit the government's case, and show that the prosecution was vexatious and in bad faith.

Petitioner asserts as cause that the government failed to disclose this material, and argues the government has continued to withhold records responsive to his discovery requests in this case. Petitioner points to his motion to compel the ATF to produce records responsive to subpoena (Doc. 157) as a partial summary of documents identified, but does not identify specific documents from this list as having been disclosed or not disclosed.  Petitioner does not provide any additional information or argument to establish cause.

The government asserts this claim abuses the writ because petitioner has not suggested any reason why he could not have raised this allegation in his § 2255 motion to vacate sentence.  The government asserts there is nothing in the motion to compel the ATF to produce records or the memorandum in support thereof that explains why the material petitioner seeks is exculpatory or could have been used for impeachment purposes.  Turning to the merits, the government states that petitioner does not identify what evidence and impeachment material was withheld at trial and, as a result, there is no basis to vacate his conviction for a supposed failure to disclose favorable and impeaching evidence.

The Court notes that the subpoena attached to the motion to compel seeks sixty-three categories of items related primarily to ATF contact with Carmi, including but not limited to ATF

15

undercover surveillance audio and videotapes, telephone recordings, ATF agent notes concerning interviews, and other ATF records and notes and letters written by Carmi. The memorandum in support of the motion to compel asserts that these items exist but have not been disclosed. The memorandum argues at length that the items subpoenaed establish, among other things, that (1) the ATF's knowledge of Carmi's memory impairment, that Carmi's testimony concerning the extent of his memory impairment was untruthful, and that the government knew it at the time; (2) Carmi's trial testimony was untruthful in various ways; (3) ATF Agent Johnson's testimony that no law enforcement agencies would be interested in .50 caliber weapons was false; and (4) recordings obtained in discovery in this case from Carmi's former attorneys Robert Herman and the law firm of Rosenblum, Schwartz, Rogers & Glass, PC, contain exculpatory and impeachment material that was never furnished to petitioner's defense team and reveal that the government's representations to petitioner's counsel in 2002 that Assistant U.S. Attorney James Martin had personally reviewed all recordings of Carmi and none of them contained <u>Brady</u> or <u>Jenks</u> materials were inaccurate and made in bad faith to mislead and prejudice petitioner.

The Court finds Count IV is an abuse of the writ. Count IV is a vague and generalized assertion of failure to disclosure materials; to the extent the Court can glean the specifics of this count from its review of the Petition and petitioner's motion to compel, it appears to be a variation on petitioner's claims in Count II concerning the government's alleged failure to disclose information concerning Carmi's brain injury, memory problems and the government's coaching of his testimony. As with Count II, the Court concludes those claims could have been raised in petitioner's § 2255 motion. The fact that petitioner later obtained additional information to support his claims, and believes there is further information yet to be discovered to support them, does not mean they could not have been raised before. <u>See</u> <u>McCleskey</u>, 499 U.S. at 497-98. Further, to the

extent Count IV concerns disclosure of information about ATF Agent Johnson's testimony concerning .50 caliber weapons, this issue was raised in petitioner's § 2255 motion and it is abuse of the writ to raise it again in the coram nobis. The Court further concludes that petitioner has not met the actual innocence standard with respect to this claim

The government's motion to dismiss Count IV as abuse of the writ will be granted.

5. <u>The Government Misled the Court and Baranski's Defense Team about the Extent and Length of Carmi's Incarceration Exposure.</u>

In Count V, petitioner asserts Carmi falsely testified at trial that he was facing a sentence of 76 to 86 months without his cooperation in petitioner's prosecution, as Carmi was actually facing a sentencing of 87 to 108 months. Petitioner asserts that the government deliberately withheld from him before, during and after the trial that in return for Carmi's testimony the government (1) did not seek a sentence in the guidelines range of 87 to 108 months, or a mandatory minimum of 15 years under 18 U.S.C. § 924(e) as an armed career criminal in connection with Carmi's initial charge under 18 U.S.C. § 922(g)(1); (2) did not prosecute Carmi on certain specified charges that would have resulted in him facing a sentence of 30 years to life; and (3) did not seek to forfeit Carmi's home, property, vehicles and currency which were the proceeds of illegal activity. Petitioner also asserts that the government coached Carmi to testify that the length of his sentence was already substantially shorter without his cooperation against petitioner, and to downplay his overall sentence exposure.

Petitioner asserts as cause for his failure to include this claim in his § 2255 motion that he did not know and could not have known Carmi was facing a much longer sentence than he testified to, until after petitioner filed the instant coram nobis petition and obtained Carmi's Presentence Investigation Report ("PSR"). As to prejudice, Count V asserts that if the government had disclosed the extent of the deal it made with Carmi in exchange for his testimony, his counsel would have been

able to impeach Carmi, the key witness against him, and show that the prosecution was in bad faith, and therefore the likelihood of his conviction would have been remote.

The government asserts that Count V is an abuse of the writ because petitioner could have raised this issue in his § 2255 motion. The government states that Baranski's attorney cross-examined Carmi concerning the sentence he faced prior to his agreement to cooperate with the government, and Carmi testified his sentence was reduced from a possible range of 76 to 86 months to an actual sentence of 42 months. Thus, the government argues petitioner was aware during the trial that Carmi's range of incarceration was reduced as a result of his agreement to cooperate and, as a result, "there is no reason why any contention regarding the scope of Carmi's potential incarceration exposure could not have been raised" in the motion to vacate sentence. Mot. to Dismiss at 24.

The Court concludes that petitioner has shown cause with respect to Count V. Carmi testified at petitioner's trial that he was facing a possible sentence of 76 to 86 months and received an actual sentence of 42 months. Petitioner asserts that he relied on this aspect of Carmi's testimony as being truthful and had no facts upon which any claim could have been based, until he obtain Carmi's sealed PSR through discovery in this case. The Court finds there is no indication Baranski possessed, or by any reasonable means could have obtained, a sufficient basis to allege the claim in Count V before he obtained Carmi's sealed PSR. Mr. Baranski alleges the PSR indicates Carmi faced a longer sentence than he testified to and also received other significant sentence considerations in return for his testimony. Petitioner has alleged facts which imply a possible understanding between Carmi and the government that the government would not seek certain charges against him and would not seek forfeiture of his assets in return for his testimony. See, e.g., United States v. Shaffer, 789 F.2d 682, 690 (9th Cir. 1986) (where the government failed to disclose

that a witness had amassed considerable assets from his drug dealings and that the government did not seek civil forfeiture of those assets, the facts indicated a possible understanding between the government and the witness that should have been disclosed). Baranski's showing of cause is bolstered by his allegations that the government failed to disclose these matters to the defense, and coached Carmi to "downplay" his sentence exposure.

Petitioner asserts that he shows actual prejudice because Carmi was the only material witness against him, and therefore any evidence that impeaches and discredits Carmi's testimony is material because Carmi's credibility is the difference between guilt or innocence for petitioner. The Court concludes that petitioner has shown actual prejudice, as his description of the importance of Carmi's testimony to his conviction is accurate. The government's case rested almost entirely on Carmi's testimony. Carmi's credibility was therefore an important issue in the case, and any evidence of a promise for a sentence reduction in return for Carmi's testimony would be highly relevant to his credibility and the jury was entitled to know about it. See Giglio, 405 U.S. at 154. If petitioner's allegations in Count V are true, they are sufficient to undermine confidence in the jury's guilty verdict as there is a reasonable probability the result of the trial would have been different if this information had been disclosed. The Court concludes that Count V is not an abuse of the writ, and the government's motion to dismiss it will be denied.

6. The Government Deliberately Withheld Information About Favors Offered to and/or Requested by Carmi.

In Count VI, petitioner asserts that although Carmi testified he had never been offered and never asked for anything from the government in return for his cooperation, except to be moved from one jail to another so his telephone calls would be less expensive, in actuality Carmi was actively seeking, and had been promised by the government, employment as a paid confidential informant with the ATF; potential employment as an FBI informant; to be geographically relocated

in his paid informant capacity with the ATF; and to be assigned to the Bureau of Prisons facility Rochester FMC. Petitioner also asserts that in exchange for his cooperation, Carmi had been actively seeking government assistance to indict his estranged wife and gain custody of his children; investigate his estranged wife's boyfriend, speak with the Lincoln County Sheriff's Department to get pending drug charges against Carmi's son dropped or withdrawn, to be moved from Rochester FMC to Marion Camp, and to be moved from Rochester FMC to a halfway house. Count VI also alleges that the government coached Carmi to deny at petitioner's trial that he had made any such requests and that he had been promised anything in exchange for his cooperation and testimony.

Petitioner asserts as cause for his failure to include this claim in his § 2255 motion that he did not know and could not have known about the favors Carmi was seeking or promises that were made to him in return for his testimony, until after petitioner filed the instant coram nobis petition and obtained various documents, pretrial services and probation office records in discovery. As to prejudice, Count VI asserts that if the government had disclosed the extent of the favors and promises it offered to Carmi and that Carmi requested in exchange for his testimony, his counsel would have been able to impeach Carmi, the key witness against him, and show that the prosecution was in bad faith, and therefore the likelihood of his conviction would have been remote.

The government argues Count VI is an abuse of the writ because Carmi testified on cross-examination that he had not been promised anything except to be moved from Ste. Genevieve to St. Louis County to reduce the cost of his phone calls, and as a result "there was no reason why any contention regarding favors allegedly promised to or demanded by Carmi could not have been raised" in Baranski's § 2255 motion to vacate sentence." Mot. to Dismiss at 24.

The Court concludes that petitioner has shown cause with respect to Count VI. Carmi testified that he was never promised anything, and asked only that he be moved to a different jail,

in return for his cooperation and testimony. Petitioner asserts that he relied on Carmi's testimony as being truthful and had no facts upon which any claim as to its untruthfulness could have been based. The Court finds there is no indication Baranski had any known or discoverable evidence that could have supported the claim in Count VI before he obtained documents through discovery in this case, which he alleges indicate Carmi asked for and/or was promised a number of different considerations in return for his testimony. Baranski's showing of cause is bolstered by his allegations that the government failed to disclose these matters to the defense and coached Carmi to deny at trial that he had made any requests or that any promises were made to him.

Petitioner asserts that he shows actual prejudice because Carmi was the only material witness against him, and therefore any evidence that impeaches and discredits Carmi's testimony is material because Carmi's credibility is the difference between guilt or innocence for petitioner. The Court concludes that petitioner has shown actual prejudice. As discussed above, Carmi's testimony was central to the government's case, and Carmi's credibility was therefore an important issue in the case. Any evidence of a promise for favors in return for Carmi's testimony would be highly relevant to his credibility and the jury was entitled to know about it. See Giglio, 405 U.S. at 154. If petitioner's allegations in Count VI are true, they are sufficient to undermine confidence in the jury's guilty verdict as there is a reasonable probability the result of the trial would have been different if this information had been disclosed. The Court concludes that Count VI is not an abuse of the writ, and the government's motion to dismiss it will be denied.

7. The Government Coached Carmi to Testify that Baranski Had Agreed to Pay for Law Enforcement Letters.

In Count VII, petitioner asserts that Carmi falsely testified at trial that (1) he told petitioner how to bribe police officers to get them to prepare letters from law enforcement agencies stating that the agencies wished to see a demonstration of a particular gun ("law enforcement letters") when the

agencies did not intend to see a demonstration; (2) Baranski agreed to pay Jeff Knipp, the chief of police of Farber, Missouri, money and/or machine guns in return for law enforcement letters requesting a demonstration of firearms; and (3) Baranski agreed to and assisted Carmi in paying someone with the Jemez Springs, New Mexico Sheriff's Department for law enforcement letters. Petitioner asserts that the government coached Carmi to falsely testify on these matters before the grand jury and at trial, as Baranski never had a discussion with Carmi about bribing police officers to obtain law enforcement letters, and never agreed to pay Knipp money or guns in exchange for law enforcement letters.

Petitioner asserts as cause for his failure to include this claim in his § 2255 motion that his Petition alleges Carmi subsequently recanted his testimony in letters to Baranski and admitted that he committed perjury, that government counsel was aware of the perjury and a government agent suborned it, and that the government did not bring the perjury to the Court's attention. As to prejudice, Count VII asserts that if the government had disclosed this information to the defense, Carmi would have been impeached, the prosecution would have been shown to be vexatious and in bad faith, and therefore the likelihood of his conviction would have been remote.

The government asserts that Count VII is an abuse of the writ because Carmi testified extensively that Baranski had agreed to pay bribes to police officers in return for law enforcement letters, so Baranski was aware of the issue at the time of trial and there is no reason he could not have included it in his § 2255 motion.

The Court concludes that Count VII is an abuse of the writ. Petitioner knew at the time of trial that Carmi's testimony was perjury, as petitioner knew he never had a discussion with Carmi about bribing police officers to obtain law enforcement letters, and never agreed to pay Knipp money or guns in exchange for law enforcement letters. Thus, petitioner had a sufficient factual

basis to include this claim in his § 2255 motion and pursue the matter through the habeas process. Any concealment by the government would not have precluded petitioner from having knowledge of sufficient facts to put him on notice to raise this claim in his § 2255 motion. The fact that petitioner later obtained additional information that would support the claim does not render Count VII non-abusive. See McCleskey, 499 U.S. at 497-98. The Court further concludes that petitioner has not met the actual innocence standard with respect to this claim. The government's motion to dismiss Count VII as abuse of the writ will be granted.

8. <u>Carmi Was Not Truthful When He Testified that Imported Firearms Were Not Intended for Law Enforcement Demonstrations</u>.

In Count VIII, petitioner asserts that Carmi committed perjury when he testified that the firearms petitioner imported were not intended for law enforcement sales and/or demonstrations, and were not desirable to law enforcement agencies, and that he was coached by the government to offer this false testimony. Petitioner asserts that both the government and Carmi knew there was a genuine interest by the government and law enforcement agencies in the firearms he imported. Petitioner asserts that discovery in this case reveals that prior to his trial, the government was in contact with various agencies that had an interest in obtaining the firearms seized from petitioner and Carmi, and most of the seized firearms were given to various governmental agencies. Petitioner asserts that the government deliberately withheld this information from defense counsel and argued to the contrary before the Court and the jury, and coached Carmi to testify that the firearms were not of interest to government agencies.

Petitioner asserts as cause for his failure to include this claim in his § 2255 motion that Carmi subsequently recanted his testimony and admitted he committed perjury in letters he sent to Baranski, that government counsel was aware of Carmi's perjury and a government agent suborned it, and that the government did not bring the perjury to the Court's attention. Petitioner points to his

pending Motion to Compel the ATF to produce records and a CD and two DVDs submitted as exhibits thereto, which he asserts were withheld from the defense and later destroyed, that came into his possession after the instant petition was filed and show that Carmi was not truthful in his testimony and that the government was aware the testimony was not truthful.[4]  As to prejudice, Count VIII asserts that if the government had disclosed this information to the defense, Carmi would have been impeached, the prosecution would have been shown to be vexatious and in bad faith, and therefore the likelihood of his conviction would have been remote.

The government asserts that Count VIII is an abuse of the writ because Carmi testified it was never intended that there be actual demonstrations of firearms, but that the demonstrations were part of the fraudulent scheme to obtain firearms illegally, and therefore Baranski was aware of the testimony at the time of trial and there is no reason he could not have included any claim of misconduct based on it in his § 2255 motion.

The Court concludes that Count VIII is an abuse of the writ.  Petitioner knew at the time of trial that Carmi's testimony was perjury, as petitioner knew the facts concerning the demonstration of firearms.  Thus, petitioner had a sufficient factual basis to include this claim in his § 2255 motion and pursue the matter through the habeas process.  Any concealment by the government would not have precluded petitioner from having knowledge of sufficient facts to put him on notice to raise this claim in his § 2255 motion.  The fact that petitioner later obtained additional information that might support this claim does not render Count VII non-abusive.  See McCleskey, 499 U.S. at 497-98.  The Court further concludes that petitioner has not met the actual innocence standard with respect to this claim.  The government's motion to dismiss Count VIII as abuse of the writ will be granted.

_____

[4]Petitioner does not provide any description as to what information contained on the CD and DVDs supports his position.

9. <u>ATF Agent Johnson Was Not Truthful When [He] Testified About the Use of .50 Caliber Weapons by Law Enforcement Agencies</u>.

In Count IX, petitioner asserts that ATF Agent Johnson, who testified as an expert witness for the government, testified falsely that (1) he had never seen a .50 caliber weapon used for law enforcement purposes; (2) he had never seen or heard of any government agency using a .50 caliber machine gun; (3) he had never seen a .50 caliber machine gun used by any law enforcement agency; and (4) .50 caliber ammunition could not be used against personnel even in war, as "it's against the Geneva Convention."

As cause for his failure to include this claim in his § 2255 motion, petitioner asserts that records and discovery obtained in this coram nobis action, and deliberately withheld by the government from his defense at trial, show that the government and Agent Johnson knew there was a genuine interest by the government and law enforcement agencies in .50 caliber weapons, including .50 caliber machine guns; that law enforcement agencies used .50 caliber firearms; and that prior to petitioner's trial the government was in contact with a number of government agencies including law enforcement that were interested in obtaining the seized firearms, including .50 caliber firearms.

The government asserts Count IX is an abuse of the writ because an identical claim was raised in petitioner's § 2255 motion and denied on the basis of procedural default because it could have been raised in petitioner's direct appeal, <u>see</u> <u>Baranski v. United States</u>, 2006 WL 472451, at *3 (E.D. Mo. Feb. 27, 2006), and therefore cannot be raised in a coram nobis petition, citing <u>Katz v. United States</u>, 494 F. App'x 679, 679-80 (8th Cir. 2012) (unpublished per curiam).

The Court concludes that Count IX is an abuse of the writ because it is a second or successive collateral proceeding. Petitioner may not raise in his coram nobis petition a claim that he previously included in his § 2255 motion that was denied on the merits. <u>See</u> <u>Sawyer v. Whitley</u>,

505 U.S. 333, 338 (1992) (a successive habeas petition raising the same grounds as a prior petition generally must be dismissed); United States v. Noske, 235 F.3d 405, 406 (8th Cir. 2000) ("The writ of coram nobis may not be used to circumvent the clear congressional directive embodied in the 'second or successive' provisions of § 2255.") (quoted case omitted); Camacho-Bordes, 94 F.3d at 1173 (coram nobis relief is substantially equivalent to habeas relief; habeas principles barring successive petitions apply to coram nobis petitions); Shaw v. Delo, 971 F.2d 181, 184 (8th Cir. 1992) (a decision that a habeas claim is procedurally barred is on the merits); and Azzone v. United States, 341 F.2d 417, 418-19 (8th Cir. 1965) (per curiam) (a coram nobis petitioner is not entitled to review of issues that were considered and resolved either on direct appeal or in a § 2255 motion to vacate).

Count IX must therefore be dismissed. The dismissal will be without prejudice to petitioner's right to seek the necessary permission from the Court of Appeals pursuant to 28 U.S.C. § 2244(b)(3)(A).

10.  Prosecutorial Misconduct and Vindictive Prosecution.

In Count X, petitioner asserts claims of prosecutorial misconduct and vindictive prosecution, alleging in part that (1) the government withheld exculpatory evidence and exculpatory impeachment evidence before, during and after his trial; (2) the government acted vindictively, employed malicious tactics and knowingly made inaccurate statements and representations to the Court and the jury concerning material facts;

> (3) AUSA Poehling, Martin, ATF agents Johnson, Green, Dawson, Dixon, and others shared a common design and understanding, and/or common goal; and conspired, to conceal the promise of a Rule 35 motion for Carmi and records thereof; conceal the severity of Carmi's head injury and memory loss and records thereof; conceal Carmi's oral statements; conceal Carmi's criminal history; conceal that Carmi was an Armed Career Criminal; conceal the actual term of incarceration Carmi faced without cooperating in Baranski's prosecution; withheld voluminous amounts of material exculpatory evidence; withheld voluminous amounts of material

exculpatory impeachment evidence; gave untruthful testimony about the use of .50 caliber firearms by law enforcement agencies; obtained a search and seizure warrant with the full knowledge that Carmi's statements were not reliable and/or outright false; destroyed evidence; committed witness tampering; coached and allowed perjured testimony to be presented.

Pet. at 37; (4) former government counsel repeatedly misrepresented material facts and issues to defense counsel, the Court and the jury to prejudice petitioner, and perpetuated their misconduct by making untruthful statements concerning material facts and issues in their depositions in this case; (5) government counsel participated in coaching Carmi, intimidated witnesses, and vindictively prosecuted petitioner because he refused to dismiss his then-pending civil action against the government and ATF agents involved in the seizure of his property; (6) government counsel threatened petitioner with criminal prosecution for exercising his constitutional rights and told petitioner that unless he dismissed his civil action against the government and ATF agents he would be indicted; (7) government counsel in their depositions in this case denied promising Carmi a Rule 35 reduction in his sentence in exchange for his cooperation and testimony against petitioner, while Carmi's former attorneys confirmed they had extensive conversations with former government counsel and Carmi had been promised a Rule 35 reduction; and (8) Carmi's sentencing transcript reveals that former government counsel verbally acknowledged on the record an agreement that Carmi would receive a further reduction in his sentence if he continued to cooperate, but at his deposition repeatedly denied that a promise of Rule 35 reduction had been made to Carmi.[5]

Petitioner asserts as cause for his failure to include these claims in his § 2255 motion to vacate that he was unaware of the prosecutorial misconduct when he filed the motion, as "most of the prosecutorial misconduct came to surface during the pendency of the instant action and through

---

[5]The coram nobis petition contains additional detailed allegations of prosecutorial misconduct and vindictiveness that the Court does not deem necessary to repeat here in order to resolve the Motion to Dismiss.

the painstaking discovery." Opp'n Mem. at 11. Petitioner asserts that he first became aware of any of the claims asserted in his coram nobis petition in January 2010, when a DEA agent gave him the letter from attorney John Rogers to James Carmi, and since that time has obtained a "voluminous amount of material exculpatory and impeachment evidence" from Carmi and in the course of discovery in this proceeding. Id.

The government asserts that Count X is an abuse of the writ because petitioner reiterates under the rubric of prosecutorial misconduct the claims he alleged in Counts I through IX, all of which the government asserts were matters that occurred before and during petitioner's trial and therefore constitute abuse of the writ. The government asserts that because petitioner has not shown why he could not have raised these claims in his § 2255 motion to vacate, the claims abuse the writ even though they are couched in terms of prosecutorial misconduct.

The Court concludes that the omnibus prosecutorial misconduct and vindictive prosecution claims in Count X are properly considered under the same analysis as the individual claims set forth in the preceding counts, as the prosecutorial misconduct claims are based on the same factual allegations as the individual claims. Accordingly, the Court finds the claims in Count X are an abuse of the writ to the extent they are based on the allegations contained in Counts III, IV, VII and VIII, as those counts are abuse of the writ, and Count IX as that count is second or successive, but the claims in Count X are not an abuse of the writ to the extent they are based on Counts I, II, V and VI. The government's motion to dismiss for abuse of the writ will be granted in part and denied in part as to Count X.

## IV. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part the government's Motion to Dismiss. The motion to dismiss for abuse of the writ will be granted as to Counts III, IV,

VII and VIII, as to Count IX as second or successive, and as to the portions of Count X that are based on the allegations of Counts III, IV, VII, VIII and IX; the motion will be denied as to Counts I, II, V and VI and the portions of Count X that are based on the allegations of those counts. The motion to dismiss for failure to state a claim upon which relief can be granted will be granted. Petitioner's motion for leave to file a third amended petition for writ of error coram nobis to allege the adverse consequences of his conviction will be granted, but petitioner shall omit from his amended petition the claims that the Court has held constitute abuse of the writ or are second or successive.

Accordingly,

**IT IS HEREBY ORDERED** that the United States' Motion to Dismiss is **GRANTED in part** and **DENIED in part**; the motion to dismiss for failure to state a claim upon which relief can be granted is **GRANTED**; the motion to dismiss for abuse of the writ is **GRANTED** as to the claims in Counts III, IV, VII, VIII and IX and the portions of Count X based on Counts III, IV, VII, VIII and IX, and **DENIED** in all other respects. [Doc. 146]

**IT IS FURTHER ORDERED** that petitioner's Motion for Leave to file a third amended petition for writ of error coram nobis is **GRANTED**, but petitioner shall omit from his amended petition those claims which the Court has held constitute abuse of the writ or are second or successive. [Doc. 169]

**IT IS FURTHER ORDERED** that the third amended petition for writ of error coram nobis shall be filed by **October 22, 2014**.

**IT IS FURTHER ORDERED** that by **November 3, 2014** the parties shall file a joint memorandum setting forth proposed deadlines for the close of discovery, for the filing of any dispositive motions, and proposed dates for the evidentiary hearing.

An appropriate order of partial dismissal will accompany this Memorandum and Order.


CHARLES A. SHAW
UNITED STATES DISTRICT JUDGE


Dated this  7th  day of October, 2014.