UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH BYRON BARANSKI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:11-CV-123 CAS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This coram nobis matter is before the Court on petitioner Keith Baranski's Motion to Compel the Bureau of Alcohol, Tobacco, Firearms and Explosive to Produce Records Responsive to a Subpoena, and for Sanctions. The United States opposes the motion and it is fully briefed. For the following reasons, petitioner's motion to compel will be granted and his motion for sanctions will be denied without prejudice.

**Background**

The background of this action has been set forth in detail previously and will not be repeated here. See, e.g., Memorandum and Order of Oct. 7, 2014 (Doc. 177). At some point, petitioner made a Freedom of Information Act ("FOIA") request to the ATF and obtained "only a portion of Reports of Investigations that had been prepared by ATF agents." Pet.'s Mem. Supp. Mot. Compel at 3. After a FOIA administrative appeal, ATF claimed to have released all but two ATF Reports of Investigations. After unsuccessfully attempting to obtain ATF materials through discovery directed to the United States Attorney's Office in St. Louis, petitioner issued a subpoena duces tecum to the Custodian of Records of the ATF's St. Louis Field Office III ("ATF-STL") on January 3, 2013. Attached to the subpoena was a list of the categories of records and documents to be produced, and

a U.S. Department of Justice Certification of Identity form completed by James M. Carmi authorizing the release of documents to petitioner and his attorney. The following records and documents were sought:

> 1) Interviews, proffers, and communications with, or concerning, James Michael Carmi (DOB 10/18/1961).
>
> 2) Notes, Reports Of Investigations, memoranda, letters, movement/transfer documents (including requests made to the U.S. Marshal's Service), photographs, and any audio or video recordings, concerning James Michael Carmi (DOB 10/18/1961) from October 17, 2000 through December 31, 2009.
>
> 3) Interviews, proffers, and communications with, or concerning, Keith Byron Baranski (DOB 12/5/70).
>
> 4) Notes, Reports Of Investigations, memoranda, letters, photographs, and any audio or video recordings, concerning Keith Byron Baranski (aka Keith Bryan Baranski) (DOB 12/5/70) from October 17, 2000 through December 31, 2009.

Pet.'s Ex. 1, Subpoena in a Civil Case (Doc. 155-3).

Petitioner's motion to compel seeks an order requiring the ATF-STL to produce for his inspection "all material identified by the subpoena." Mot. Compel at 1. Petitioner contends that "ATF is selectively disclosing the responsive material to hamper discovery and prevent disclosure of embarrassing tactics employed in securing and upholding [his] conviction." Mem. Supp. Mot. Compel at 1. Petitioner also contends that ATF "systematically destroyed crucial exculpatory and impeachment evidence" while his prior action under 28 U.S.C. § 2255 was pending, "under the guise of the agency's records retention policy." Id. at 2.

Petitioner states that the ATF's initial response to his subpoena was that all responsive records had been produced in response to his FOIA requests. After discussions between counsel, the U.S. Attorney's Office ("USAO") released approximately 7,500 pages of ATF material on May 29, 2013. Petitioner's review of this material "pointed to other material that could not be located

within the disclosed records, and led to the conclusion that the disclosure was incomplete." Id. at 5. Petitioner informed the USAO that disclosure was incomplete and Assistant U.S. Attorney Matthew Drake advised petitioner that he would contact ATF and make an inquiry. In the meantime, petitioner obtained portions of James Carmi's case file from Carmi's former defense attorneys, which included discovery material released by the government prior to petitioner's prosecution in 2000 or 2001. Included in this material were numerous ATF undercover surveillance audio and videotapes of Carmi's investigation prepared by government agents including Carmi's ATF case agent, Michael Johnson. Petitioner claims these surveillance recordings contain exculpatory and impeachment material that were never furnished to his defense team in the underlying criminal case.

Petitioner asserts that on November 26, 2013, AUSA Drake represented that the USAO did not know of any audio or video recordings made of either Carmi or Baranski's investigations, but that if such audio and video recordings did exist of Carmi's investigation, Baranski should already possess them through the original discovery production from the government in 2002, as those recordings would clearly be Jencks material and exculpatory evidence to which Baranski was entitled.[1] Petitioner confirmed with his former criminal defense team, however, that "nearly all of the material" was never provided to them. Despite further conferences with AUSA Drake, petitioner was informed on April 14, 2014 that ATF had released all material subject to discovery and no additional records would be forthcoming. On April 25, 2014, AUSA Drake advised petitioner's counsel that he had spoken with ATF Agent Johnson, who was in charge of both the Carmi and

---

[1]"The Jencks Act requires that the prosecutor disclose any statement of a witness in the possession of the United States which relates to the subject testified to by the witness on direct examination." United States v. Stroud, 673 F.3d 854, 863 (8th Cir. 2012) (quotation omitted) (citing 18 U.S.C. § 3500(b)).

3

Baranski investigations, and Agent Johnson stated he was unaware of any video recordings of Carmi's ATF investigation and none could be located. Agent Johnson also stated any pertinent information that may have been contained in any records was "thoroughly detailed" in the ATF Reports of Investigations. Later, petitioner was informed that surveillance recording had been destroyed in accordance with ATF's Document Retention Policy. In May 2014, AUSA Drake confirmed that ATF had no remaining audio or video evidence from the Carmi or Baranski cases, but there was some "video from search warrants" that would be provided to petitioner.

With respect to ATF-STL's destruction of records, petitioner states that one of the records produced was an ATF Destruction Report dated July 22, 2008 that covers some of the audio/video surveillance recordings never disclosed to his defense team, which reflects that the materials were destroyed while his petition for writ of certiorari on his § 2255 motion was pending before the U.S. Supreme Court. In support of his assertion that other ATF records have not been disclosed, petitioner states that discovery has revealed Carmi had at least seven and as many as ten proffer interviews with the government, but ATF-STL has only produced four Reports of Investigations from interviews with Carmi.[2] Petitioner also identifies a Secret Service letter of August 30, 2002 that he asserts was clearly exculpatory evidence and exculpatory impeachment evidence, which also references prior communications yet to be disclosed. Petitioner filed with the Court copies of recordings he received from Carmi's former defense attorney, which he asserts contain "extensive material exculpatory impeachment evidence" that were never produced to petitioner's criminal

---

[2]Attached as Exhibit 3 to Baranski's motion to compel is a list of documents or records that he asserts were referenced in materials disclosed by ATF but not produced. The list is misnumbered and indicates that sixty-three items, but actually includes sixty-five items.

4

defense team, and further asserts that the recordings are "only a *few* of many, believed to have been created and/or possessed by ATF." Id. at 9.

A significant portion of petitioner's Memorandum in Support argues the merits of his claims and seeks to show how the allegedly withheld documents are material and exculpatory, as opposed to focusing on the issue of whether documents and records exist and have been improperly withheld. The Court disregards these arguments.

The United States responds to the motion to compel, presumably on behalf of the ATF although the Response does not so state.[3] In summary, the government asserts that the Motion to Compel should be denied because (1) all discoverable documents possessed by ATF-STL have been produced; (2) the documents petitioner refers to in his Motion to Compel do not exist and petitioner is aware of that fact, and/or (3) petitioner already possesses the materials he seeks to compel from the ATF-STL.

As a threshold matter, the government responds that petitioner's list of sixty-five items presented to it for the first time in connection with the Motion to Compel. The government argues the list is "tantamount to a new, more specific discovery request, which was not the subject of a meet and confer before the Motion was filed." It also asserts that "[w]ith the exception of a small number of documents recently discovered and considered privileged, there is no additional material for this Court to compel from the ATF-STL." Response at 2.[4]

---

[3]For the remainder of this opinion, the Court will refer to the United States and the ATF-STL collectively as "the government."

[4]As will be discussed *infra*, the United States has not complied with Rule 45(e)(2)(A)(ii)'s directive to describe the nature of the allegedly privileged documents in a manner that will enable the parties to assess the claim.

The government further responds that petitioner served at least five subpoenas on the ATF generally and the U.S. Attorney's Office for the Eastern District of Missouri, was given the opportunity to inspect and copy all non-privileged materials and records in the government's possession, and the government has copied and produced voluminous ATF records as identified in its Response including 5,784 pages from the ATF-STL in May 2013.

The government states it has repeatedly advised petitioner the materials identified in the Motion to Compel and the sixty-five item list either (1) never existed, (2) no longer exist because they were disposed of in the normal course of ATF business, or (3) are not in the possession and control of the ATF-STL. The government notes that in petitioner's underlying criminal case, the Magistrate Judge conducted an *in camera* review of nineteen ATF-STL reports and found them to be unrelated to Baranski's case, and also found that two ATF-STL reports Baranski believed were missing simply did not exist. The government also states it has repeatedly advised petitioner that Title III wiretaps were never sought, authorized or utilized in the investigation of either Carmi or Baranski from 1999 through 2003, and his allegations that such wiretaps exist are without merit.[5]

The government asserts that no records have been disposed of since this Coram Nobis case was commenced, and that it is not aware any other records were disposed of until after the conclusion of Baranski's criminal proceedings and the denial of his direct appeal and motions to

---

[5]The second Item 13 on petitioner's list seeks *Telephonic audio recordings as well as associated Agents notes, concerning a telephone wire tap on Carmi as well as Michael Leara in February and March, 2001. A telephone wire tap application was completed by ATF Dixon, approved AUSA Richard Poehling, on both Carmi and Michael Leara February and March 2001. ATF and the USAO now claim they have no knowledge whatsoever that this action occurred, nor were they able to locate any responsible records. This was detailed in a meet and confer with AUSA Drake*. The government responds that if petitioner will provide a copy of the wiretap application, it is "further willing to investigate the existence of any discoverable records." Response at 16. Petitioner may wish to provide a copy of the wiretap application if he has not already done so.

6

vacate his sentence. In July 2008, however, the ATF-STL disposed of audio and video surveillance evidence – consistent with ATF policies and guidelines – that petitioner is currently demanding be produced. The government states that after the Motion to Compel was filed, it requested ATF-STL to search again for the existence of any of the requested materials, but none were found. Further, that petitioner admits he received from Carmi's former attorneys audio and video recordings that are part of the material he seeks to compel ATF-STL to produce, but which it has destroyed and thus cannot produce. Finally, the government also offers a specific response to each of the sixty-five items on petitioner's list.

Petitioner replies that the government admits ATF-STL recently found a small number of documents that are considered privileged, but has not provided any affidavit or declaration describing ATF-STL's efforts to comply with the subpoena, and has failed to comply with the provisions of Rule 45(e)(2), Fed. R. Civ. P., as it has not made an express claim of privilege supported by a description of the documents, communications, or things not produced that is sufficient to enable petitioner to contest the claim. Petitioner contends that by failing to provide a privilege log, ATF-STL has waived any privilege. Petitioner also states that while the government claims certain ATF National Firearms Act ("NFA") records are privileged tax information, it fails to acknowledge that petitioner sought NFA records concerning himself and Carmi, and provided proper privacy waivers for the information.

Petitioner asserts that despite the Court's ruling in the underlying criminal case, he is still seeking missing documents including the two missing Reports of Investigations, as he has evidence from Carmi and his former attorneys that Carmi made more than four proffers, ATF-STL only produced records of four. Petitioner describes as "outrageous and disingenuous" the government's claim that it "produced all materials in the purview of [Fed. R. Crim. P.] 16" during the underlying

7

criminal case, as the records and discovery obtained thus far indicate the government deliberately withheld numerous exculpatory materials and records including Carmi's presentence investigation report and sentencing transcript, ATF's audio and video recordings, Federal Bureau of Prisons medical records, and nearly all of Carmi's handwritten letters to ATF agents. Reply at 3-4.

Petitioner characterizes as groundless the government's claim that he possesses certain materials he seeks to compel. Petitioner refers to the list of sixty-five items and argues that because each item is referenced in documents that were produced, he has shown a reasonable indication the items exist and have yet to be disclosed. Petitioner also asserts that ATF Agent Johnson's testimony, that all evidence ATF-STL held concerning his underlying criminal case was disposed of, is called into doubt because Agent Johnson also testified that Carmi was not employed as a confidential informant although records and testimony of former U.S. Probation Office Raoul Williams establish that Carmi was in fact employed and paid as a confidential informant.[6]

Finally, petitioner identifies some of the government's specific responses to the list of sixty-five items as demonstrating ATF-STL's "sandbagging" of his discovery requests. For example, he cites ATF-STL's response to the second item numbered 14, seeking *Agent(s) notes, as well as records concerning Carmi attempting to become, and later became, a Confidential Informant with ATF from 01 March 2001 onward*, that ATF-STL did not interpret the subpoena for "interviews . . . and communications with, or concerning James Michael Carmi" as covering Carmi's potential use as an informant.[7]

---

[6]Petitioner's Reply does not address the government's assertion relating to his possession of copies of audio and videotapes obtained from Carmi's former counsel.

[7]Petitioner's Reply does not address the government's further response to second Item 14 on the list, that in early October 2014 it learned documents concerning Carmi's role as a confidential informant in 2004 (after Carmi was released from prison for his conviction related to Baranski's

Petitioner also cites ATF-STL's response to item 63, seeking *Vic's Gun Corporation's firearms transfer paperwork*, that ATF-STL does not possess such records because firearms transfer paperwork is maintained by businesses and individuals, and that it searched its records and found no discoverable records or materials including Item 63. Petitioner states that while the first portion of ATF-STL's response is true as a general proposition, the subject firearms records were seized by ATF when Carmi was arrested and could not have been disposed of because they include records required for future law enforcement tracing of firearms sold by Vic's Gun Corporation.

**Discussion**

    A. <u>Motion to Compel</u>

"The Government as a litigant is, of course, subject to the rules of discovery.' <u>United States v. Procter & Gamble Co.</u>, 356 U.S. 677, 681 (1958)." <u>Alltel Commc'ns v. DeJordy</u>, 675 F.3d 1100, 1103 (8th Cir. 2012) (parallel citations omitted). A party withholding information on a claim that it is privileged has the burden to establish that the privilege applies. <u>Hollins v. Powell</u>, 773 F.2d 191, 196 (8th Cir. 1985); <u>see</u> <u>also</u> Mem. and Order of Feb. 9, 2012 at 4 (Doc. 42).

As an initial matter, the Court rejects the government's assertion that the sixty-five item list attached to the Motion to Compel constitutes a new discovery request that was not part of the subpoena duces tecum issued to ATF-STL and was not part of the good-faith meet and confer discussions between counsel. It is therefore properly before the Court via the Motion to Compel.

---

underlying case) were located in ATF's Kansas City Division. The government's response states these were not produced because (1) records at ATF-Kansas City were not part of petitioner's subpoena to ATF-STL, (2) ATF records of confidential informant matters are privileged and not discoverable, and (3) these records relate to investigations completely unrelated to Baranski's case and pertain to matters that occurred long after his trial.

The following considerations are relevant to resolution of the Motion to Compel. There appears to be a pattern with respect to discovery requested from ATF-STL, in which the government represents that all "discoverable" records and documents still in existence have been disclosed, but then later finds documents not previously disclosed. The government's failure to interpret the subpoena's request for "interviews . . . and communications with, or concerning James Michael Carmi" as covering Carmi's potential use as an informant is troubling. Carmi's status as a government informant is a relevant issue in this case into which the Court has previously allowed discovery. The government's failure to interpret petitioner's request for "communications concerning James Michael Carmi" as including emails also raises concern, as does its assertion that certain records and documents petitioner seeks were disclosed to his former criminal defense team. This assertion does not appear to be supportable, and begs one of the very questions presented by this coram nobis matter. The Court also considers the fact that the documents and records on the sixty-five item list were referenced in materials that have been produced, thus taking the items petitioner seeks outside the realm of mere speculation or suspicion and providing the basis for a reasonable deduction they may exist.

The Court will grant petitioner's Motion to Compel and order ATF-STL to review all of its records to determine whether any records or documents exist that are responsive to the subpoena or any of the sixty-five listed items.[8] The government should also explain why it does not have the Vic's Gun Corporation firearms transfer paperwork that was previously seized. To the extent petitioner seeks the production of emails as discussed in the government's response to Item 60, the

---

[8] Obviously, if records have been destroyed, they can no longer be produced by ATF-STL even if copies of the same records were retained by third parties, such as Carmi's former defense counsel. Petitioner may be in the somewhat unusual position of having access to certain documents or records that are no longer in the government's possession.

10

parties should meet and confer concerning the scope and accessibility of the emails, what methods will be efficient in identifying discoverable emails, the format in which they are stored and would be produced, as well as the potential burdens and cost of production. <u>See</u>, <u>e.g.</u>, Rule 26(b)(2)(B).

To the extent the government has claimed privilege for certain records and documents, it has not complied with the requirements of Rule 45(e)(2) or otherwise met its burden to show that a privilege applies. The government's Response refers to a "small number of documents recently discovered and considered privileged" that would otherwise be responsive to petitioner's subpoena, Response at 2, but does not identify what the privileged documents are; and later asserts that ATF records concerning confidential informant matters are privileged and not discoverable. <u>Id.</u> at 15-16. The government also responds that it produced all non-privileged information held by the ATF-NFA branch, noting that it "informed Petitioner that other items identified in the subpoena were considered tax information and therefore privileged and otherwise protected from dissemination by law." <u>Id.</u> at 4, n.3; <u>see</u> <u>also</u> <u>id.</u> at 22.

Rule 45(e)(2)(A) provides, "A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." The advisory committee's note to Rule 45(e) states that subparagraph (e)(2) corresponds to the similar requirements of Rule 26(b)(5). "Its purpose is to provide a party whose discovery is constrained by a claim of privilege . . . with information sufficient to evaluate such a claim and to resist if it seems unjustified. The person claiming a privilege . . . cannot decide the limits of that party's own entitlement." Fed. R. Civ. P. 45 advisory committee's note to 1991 Amendments (discussing former subdivision (d)).

"The description of the withheld materials is therefore a required element, and a claim of privilege made without the description of the materials is insufficient." 9 James Wm. Moore, et al., Moore's Federal Practice § 45.61[1] (3d ed. 2014). See also Mem. and Order of Feb. 9, 2012 (Doc. 42). "A party receiving a discovery request who asserts a privilege or work product protection but fails to disclose the nature of that claim and provide a description is at risk of waiving the privilege or protection. Courts consistently have held that such a party is required to produce a document index or privilege log, and that the failure to produce a log of sufficient detail constitutes a waiver of the underlying privilege or work product claim." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2464 (3d ed. 2011); see, e.g., In re Grand Jury Subpoena, 274 F.3d 563, 575-76 (1st Cir. 2001) ("courts consistently have held that the rule requires a party resisting disclosure to produce a document index or privilege log. A party that fails to submit a privilege log is deemed to waive the underlying privilege claim.").

If the government's claim of privilege is based on records within the control of ATF-STL, it must promptly produce a privilege log in accordance with Rule 45(e)(2)(A) or the Court will deem any privilege waived. The government shall also address in its privilege log or otherwise why the previously subpoenaed NFA records concerning Carmi and Baranski should not be produced pursuant to their privacy waivers.

To the extent the government's claim of privilege concerns records or documents held by the ATF Kansas City Division, it need not produce a privilege log because as those records or documents would be outside the scope of petitioner's subpoena to ATF-STL, *unless* they are responsive to any of the other four subpoenas petitioner has served on ATF. If the documents are responsive to any subpoena served on ATF, the government must either produce the documents or

provide a privilege log. The government is reminded that the Court has permitted discovery in this matter concerning James Carmi's role as a confidential informant.

B. <u>Motion for Sanctions</u>

Petitioner also moves for sanctions against the ATF for its nondisclosure in response to the subpoena, under Rule 37(b)(1) or (2), Federal Rules of Civil Procedure, or "at minimum" for civil contempt under Rule 45(g), seeking his costs, attorney's fees and expenses in connection with the Motion to Compel. Petitioner acknowledges the Court has previously stated Rule 37 does not apply to a nonparty that fails to comply with a subpoena, <u>Fisher v. Marubeni Cotton Corp.</u>, 526 F.2d 1338, 1341 (8th Cir. 1975), but argues he should be able to obtain Rule 37's remedies on his Rule 45 subpoena because (1) he "submitted a Request for Production of Documents, the scope of which included the ATF's responsive documents and records, and hence, the duty to supplement is continuing; and the government's obligation under Rule 26 and 37 is not discharged", Mem. Supp. Mot. Compel at 24; and (2) "ATF is the investigating agency and an integral part of the respondent; and pursuant to Touhy Requirements, respondent's counsel reviews and decides relevancy and whether to disclose each agency's responsive records prior to actual production to Baranski." <u>Id.</u> Petitioner also argues that ATF, even if treated as a nonparty, could be sanctioned under Rule 37(b)(1), which applies to any deponent. Petitioner then acknowledges, however, that an order compelling discovery is the "first step in obtaining sanctions" under Rule 37. <u>Id.</u> at 26.[9]

The government responds that petitioner's motion for sanctions is premature, because it has not failed to comply with any order of the Court and an order compelling discovery is generally a prerequisite to a motion for sanctions. The government states that where a party fails to produce

---

[9]Petitioner therefore appears to acknowledge that a motion for sanctions under Rule 37 would be premature, as no order compelling ATF-STL to respond to his subpoena has been issued.

documents requested under Rule 34, Fed. R. Civ. P., the Court may enter an order compelling the party to produce documents under Rule 37(a)(3)(B). The government also asserts that the motion for sanctions is meritless because "none of the discoverable materials sought by Petitioner exist" and the Motion to Compel is based on speculation with no legitimate basis to believe that documents exist "as it has been communicated to counsel on numerous occasions that such documents do not exist." Response at 11.

The procedural basis of petitioner's motion to compel must be clarified before its merits can be addressed. The parties primarily discuss Rules 34 and 37, Fed. R. Civ. P., but these rules do not apply to petitioner's motion. Rule 34 permits discovery of documents, electronically stored information, tangible things, or premises are in the possession, custody, or control of a *party* to the action." 9 James Wm. Moore, et al., Moore's Federal Practice § 45.02[3] (3d ed. 2014). ATF-STL, the entity to which petitioner's subpoena was directed, is not a party to this action. Petitioner's argument that ATF-STL should be *treated* as a party is unclear, insufficiently developed and not supported by citation to any legal authority, and the Court accordingly rejects it. While Rule 37 provides a mechanism to enforce compliance with discovery requests under Rules 26 to 36, it "has no application to a non-party's refusal to produce documents." Fisher, 546 F.2d at 1341 (internal citation omitted); see Fed. R. Civ. P. 37(a)(3)(B)(i)-(iv).

Rule 34(c) provides that production of documents from a nonparty can be compelled only in accordance with Rule 45. Fisher, 526 F.2d at 1341 (citations omitted); see Rule 34(c), Fed. R. Civ. P. Rule 45(d)(2)(B) provides that a person commanded to produce documents or things may serve a written objection to the subpoena. Further, the serving party may move the court for an order compelling production or inspection. See Rule 45(d)(2)(B)(i). Rule 45(g) provides that a

court may hold in contempt a nonparty who "fails without adequate excuse to obey the subpoena or an order related to it."

A leading federal practice treatise explains that because a subpoena is an order of the court, "contempt sanctions are available merely for the initial disobedience of the subpoena, and a prior court order compelling compliance with the subpoena is not invariably required." 9 Moore's Federal Practice § 45.62[3]. Thus, the government's assertion that petitioner's motion for sanctions is premature because there has been no order of the Court compelling it to respond to the subpoena is not well taken. The Court is mindful, however, that the Advisory Committee has stated contempt sanctions under Rule 45 should be "sparingly applied" because "the command of an attorney-issued subpoena is effectively that of the attorney, and not that of 'a judicial officer.'" Fed. R. Civ. P. 45 advisory committee's note of 1991.

Here, the Court finds that the government has failed to comply with the privilege log requirement of Rule 45, but has no basis at this time to find that ATF-STL has failed to produce documents responsive to petitioner's subpoena. As a result, the Court in the exercise of its discretion will deny petitioner's motion for sanctions, construed as a motion for contempt under Rule 45(g), without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that petitioner Baranski's Motion to Compel is **GRANTED** to the extent that the ATF's St. Louis Field Office III shall conduct a thorough review of all documents and records within its control to determine if any documents or records exist that are responsive to petitioner's subpoena duces tecum and the list of sixty-five items attached to petitioner's Motion to Compel, in accordance with this Memorandum and Order. Any such documents or records shall be produced within thirty (30) days of this date of this Order. [Doc. 157]

**IT IS FURTHER ORDERED** that to the extent the ATF's St. Louis Field Office III claims that any otherwise responsive documents or records are subject to privilege, including the documents and records ATF-STL has previously identified as privileged, it shall file a privilege log in accordance with Rule 45(d)(2)(A) within thirty days of the date of this Order, or the Court will deem any privilege waived.

**IT IS FURTHER ORDERED** that petitioner Baranski's Motion for Sanctions, construed as a motion for contempt under Rule 45(g), is **DENIED** without prejudice. [Doc. 157]

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  19th  day of December, 2014.