# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| KEITH BYRON BARANSKI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:11-CV-123 CAS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This *coram nobis* matter is before the Court on the government's Response to the Memorandum and Order of December 19, 2014 (the "Order") (Doc. 194), which granted petitioner Keith Byron Baranski's motion to compel to the extent set forth in the Order.[1]  The matter is fully briefed as petitioner filed a Sealed Response to the government's Response, the government filed a Reply, and petitioner was granted leave to file a Surresponse which he later supplemented.

## I. Procedural Background

In August 2014, petitioner filed a motion to compel the production of certain documents he asserted were responsive to a subpoena duces tecum issued in January 2013 to the Custodian of Records of the Bureau of Alcohol, Tobacco and Firearms ("ATF") St. Louis Field Office III ("ATF-STL").  Attached to the subpoena was a list of the categories of records and documents to be produced, and a U.S. Department of Justice Certification of Identity form completed by non-party James M. Carmi authorizing the release of documents to petitioner and his attorney.  The subpoena sought the following records and documents:

---

[1]As it has done previously in this case, the United States responds to the Court's Order on behalf of the "government," although the subpoena at issue was directed to the ATF.  The Court will refer interchangeably to the government and the ATF, as appropriate.

1) Interviews, proffers, and communications with, or concerning, James Michael Carmi (DOB xx/xx/1961).

2) Notes, Reports Of Investigations, memoranda, letters, movement/transfer documents (including requests made to the U.S. Marshal's Service), photographs, and any audio or video recordings, concerning James Michael Carmi (DOB xx/xx/1961) from October 17, 2000 through December 31, 2009.

3) Interviews, proffers, and communications with, or concerning, Keith Byron Baranski (DOB xx/xx/70).

4) Notes, Reports Of Investigations, memoranda, letters, photographs, and any audio or video recordings, concerning Keith Byron Baranski (aka Keith Bryan Baranski) (DOB xx/xx/70) from October 17, 2000 through December 31, 2009.

Pet.'s Ex. 1, Subpoena in a Civil Case (Doc. 155-3).

Petitioner's motion to compel sought an order requiring the ATF-STL to produce for his inspection "all material identified by the subpoena." Mot. Compel at 1. The Order of December 19, 2014 granted petitioner's motion to compel to the following extent:

[T]he ATF's St. Louis Field Office III shall conduct a thorough review of all documents and records within its control to determine if any documents or records exist that are responsive to petitioner's subpoena duces tecum and the list of sixty-five items attached to petitioner's Motion to Compel, in accordance with this Memorandum and Order. Any such documents or records shall be produced within thirty (30) days of this date of this Order. [Doc. 157]

**IT IS FURTHER ORDERED** that to the extent the ATF's St. Louis Field Office III claims that any otherwise responsive documents or records are subject to privilege, including the documents and records ATF-STL has previously identified as privileged, it shall file a privilege log in accordance with Rule 45(d)(2)(A) within thirty days of the date of this Order, or the Court will deem any privilege waived.

Order at 16.

In the government's response to Baranski's motion to compel, it stated that in early October 2014 it learned documents concerning Carmi's role as a confidential informant in 2004 were located in ATF's Kansas City Division. The Order also addressed these documents in connection with the government's claim of privilege:

To the extent the government's claim of privilege concerns records or documents held by the ATF Kansas City Division, it need not produce a privilege log because as those records or documents would be outside the scope of petitioner's subpoena to ATF-STL, *unless* they are responsive to any of the other four subpoenas petitioner has served on ATF. If the documents are responsive to any subpoena served on ATF, the government must either produce the documents or provide a privilege log.

Order at 12.

The Order also directed the government to "explain why it does not have the Vic's Gun Corporation firearms transfer paperwork that was previously seized." Id. at 10. With respect to petitioner's request for certain emails, the Order directed the parties to "meet and confer concerning the scope and accessibility of the emails, what methods will be efficient in identifying discoverable emails, the format in which they are stored and would be produced, as well as the potential burdens and cost of production. See, e.g., Rule 26(b)(2)(B)." Order at 10. Finally, the Order directed the government to "address . . . why the previously subpoenaed [National Firearms Act] records concerning Carmi and Baranski should not be produced pursuant to their privacy waivers." Id. at 12.

The government filed a Response (Doc. 195) that addresses each aspect of the Order, including the ATF's response to each subpoena or discovery request petitioner directed to various ATF offices. Attached to the government's Response are a number of exhibits and declarations of ATF personnel signed under penalty of perjury that address the ATF's actions in responding to petitioner's discovery requests. Included among the exhibits is Government Exhibit I, a privilege log of "records withheld from production pursuant to subpoena issued to [ATF] St. Louis Field Office III." (Doc. 195-9.) The government requests a hearing on discovery related to the following issues: the ATF Kansas City Field Division ("ATF-Kansas City") confidential informant file, emails

and electronically stored records, and "any other matter left unresolved after the Court's review of this response." Gov't Response at 3.

Petitioner filed a Sealed Response to the Government's Response (Doc. 201) along with a number of exhibits. In part, petitioner's Sealed Response asserts that all of the records listed on the government's privilege log, Exhibit I, were produced to petitioner on May 29, 2013 in response to the subpoena duces tecum. The government filed a Reply (Doc. 203) which states that upon receiving petitioner's Sealed Response, it realized for the first time that it had inadvertently produced privileged documents. The government asserts that all of the documents identified on Exhibit I should be returned to it pursuant to Federal Rule of Civil Procedure 26(b)(5)(B), and asks that all notes concerning the privileged documents be destroyed. Several exhibits accompany the Reply, including a second privilege log, Government Exhibit M, which lists ATF-Kansas City documents concerning the James Carmi confidential informant file. Petitioner sought and was granted leave to file a Surresponse (Doc. 204) that primarily addresses whether the government has waived any privilege for the documents that were alleged to have been inadvertently produced.

## II. Discussion

### A. The Government Has Waived its Claims of Privilege

As stated above, the government asserts that fifty-eight documents listed on Exhibit I are privileged and were inadvertently produced, and asks that petitioner be ordered to return the documents and destroy any notes concerning them. Rule 26(b)(5)(B), Fed. R. Civ. P., establishes a procedure for issues relating to inadvertently produced material:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is

> resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B). The Rule "provides a procedure for presenting and addressing these issues," but does not address the issue of whether the privilege was waived by the production of the material. Fed. R. Civ. P. 26 Advisory Committee Comments (2006 Amendment).

Federal common law governs privilege issues where, as here, jurisdiction is based on federal questions. Federal Rule of Evidence 501; <u>United States v. Ghane</u>, 673 F.3d 771, 780 (8th Cir. 2012). Federal courts have used three distinct approaches to the issue of privilege waiver based on the inadvertent disclosure of privileged information: (1) the lenient approach; (2) the strict approach; and (3) the "middle" or <u>Hydraflow</u> approach.[2] <u>Gray v. Bicknell</u>, 86 F.3d 1472, 1483 (8th Cir. 1996). The Eighth Circuit adopted the <u>Hydraflow</u> approach in <u>Gray</u>, a diversity case in which the Missouri state courts had not addressed the issue of privilege waiver. <u>Id.</u>

Although the Eighth Circuit has not had the opportunity to determine which test to apply in federal question cases, this Court has previously applied the <u>Hydraflow</u> approach in a federal question case and will do so in this case as well. <u>See</u> <u>Jo Ann Howard & Assocs., P.C. v. Cassity</u>, 2013 WL 3788804, at *3 (E.D. Mo. July 19, 2013); <u>see also</u> <u>Engineered Prods. Co. v. Donaldson Co., Inc.</u>, 313 F.Supp.2d 951, 1020 (N.D. Iowa 2004) (concluding the Eighth Circuit would likely apply the <u>Hydraflow</u> approach to inadvertent disclosure of privileged information in federal question cases); <u>Starway v. Independent Sch. Dist. No. 625</u>, 187 F.R.D. 595, 596 (D. Minn. 1999) (applying <u>Hydraflow</u> approach to a federal question case).

---

[2]<u>Hydraflow, Inc. v. Enidine Inc.</u>, 145 F.R.D. 626, 637 (W.D.N.Y. 1993).

Under the <u>Hydraflow</u> approach, "the court undertakes a five-step analysis of the unintentionally disclosed document to determine the proper range of privilege to extend." <u>Gray</u>, 86 F.3d at 1483.  The relevant factors are:

> (1) The reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) the promptness of measures taken to rectify the disclosure, and (5) whether the overriding interest of justice would be served by relieving the party of its error.

<u>Gray</u>, 86 F.3d at 1484 (cited case omitted).

In 2008, the Federal Rules of Evidence were amended to address the issue of waiver regarding inadvertently produced material covered by the attorney-client privilege or work product protection.  The Rule states:

> When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b)

Rule 502(b) adopts the middle ground on whether inadvertent disclosure constitutes a waiver of the attorney-client and work product privileges.  Fed. R. Evid. 502 Advisory Committee Explanatory Note (revised 11/28/2007).  Although Rule 502(b) does not explicitly codify the <u>Hydraflow</u> test, it is flexible enough to accommodate all of its factors.  Under Rule 502(b), the disclosing party has the burden to prove that inadvertent disclosure does not operate as a waiver of the attorney-client or work product privilege.  6 <u>Moore's Federal Practice</u> § 26.49[5][h][iii] (3d ed.

2014); see, e.g., Rhoades v. Young Women's Christian Ass'n of Greater Pittsburgh, 2009 WL 3319820, at *2 (W.D. Pa. Oct. 14, 2009) (burden on disclosing party).

In this case, the Court finds that as a whole the Hydraflow factors weigh in favor of waiver. Regarding the first factor, the reasonableness of precautions taken, the government states that after the U.S. Attorney's Office obtained the ATF-STL case file, the records therein were electronically scanned and entered into an electronic document management system. Records in the scanned file were then identified and "segregated into documents that were: (1) non responsive to the subpoena issued to ATF St. Louis; (2) were assessed to be privileged." Gov't Reply at 5. The government states that the U.S. Attorney's Office produced a disc of Bates-labeled records to be disseminated to petitioner, and

> [t]he disc which was believed to have been produced to Petitioner contained ATF St. Louis records, but did not contain those that were segregated and later identified in the privilege log. However, based on representations in Petitioner's pleading (sic) it appears that Petitioner received a disc containing all records from the ATF St. Louis case file, including records identified on the privilege log. The "control copy" disc of records that the Office of the United States Attorney presently possesses indicates that only the non-privileged records were produced.

Reply at 6.

Petitioner responds that the U.S. Attorney's Office letter of May 29, 2013 belies the government's assertion of inadvertent production because the letter stated the disclosed records were "scanned, numerically Bates labeled, and saved as a pdf image," and specified that the records included materials from:

> ATF St. Louis (ATF St. Louis, MO - 00001 to 05784) ATF Columbus, Ohio (ATF Columbus 0001-00100), and ATF Chicago (non privileged legal counsel records - ATF Chicago 0001-01594).

Gov't Ex. E at 1. Petitioner states that his counsel received the records on a disc exactly as they were identified in the letter, and therefore argues this is evidence there was no misunderstanding or

ambiguity as to what the government produced in response to the subpoena, or as to what his counsel received. Petitioner's assertion is not, however, supported by an affidavit of counsel and therefore is not evidence. Unsupported statements in a brief are not evidence and cannot be accepted as such. See Latorre v. United States, 193 F.3d 1035, 1038 (8th Cir. 1999).

The Court finds the manner in which the documents were produced weighs against a finding that the government took reasonable precautions against inadvertent disclosure. The documents for which the government now claims privilege were Bates-labeled and intermingled with non-privileged documents. As a result, there is no explanation for the government's subsequent production of documents sequentially Bates-labeled 00001 through 05784 – without exception or omission – that is consistent with its claims of reasonable effort to avoid inadvertent disclosure. The government must or should have realized that it was producing all of the ATF-STL documents, including those it now asserts are privileged.

The government does not provide any information as to who conducted the document review, in what manner documents were "segregated," who prepared the disc that was provided to petitioner, or whether anyone reviewed the disc prior to its production. Cf. United States Securities and Exch. Comm'n v. Welliver, 2012 WL 8015672, at *6 (D. Minn. Oct. 26, 2012) (where disclosing party failed to identify any steps taken to prevent an inadvertent error, court could not credit its "'safeguards,' if any, as 'reasonable.'"). This failure weighs against a finding that the government took reasonable precautions to prevent inadvertent disclosure. Further, the government's assertions concerning the facts relevant to its claims of inadvertent production are not supported by affidavits and therefore have no evidentiary value.

In addition, although the documents at issue were produced on May 29, 2013, the government did not produce its privilege log until January 20, 2015, almost twenty months later, and

only after it was ordered to do so by the Court. The government's failure to prepare a privilege log as required by the Federal Rules of Civil Procedure, even though it claims to have identified documents that were both privileged and non-privileged, weighs against a finding that the government can establish it took reasonable precautions to prevent inadvertent disclosure. This is particularly true where the letter accompanying the discovery materials stated that the government was withholding additional materials as privileged or otherwise non-discoverable, and was in the "process of completing a log of these materials so that you are aware what we have withheld and why we withheld the materials."[3] Gov't Ex. E at 1. See Seger v. Ernest-Spencer Metals, Inc., 2010 WL 378113, at **5-6 (D. Neb. Jan. 26, 2010) (party waived privilege where it produced documents for which privilege was later claimed and did not produce a privilege log until ten months after producing the documents).

The government's apparent failure to label or otherwise provide an indication of the alleged privileged status of the documents also weighs against a finding that it took reasonable precautions to prevent inadvertent disclosure. See Jo Ann Howard & Assocs., 2013 WL 3788804, at *5 (failure to label documents as privileged was a factor in finding that producing party failed to take reasonable precautions to prevent inadvertent disclosure).

The second and third factors, the number and extent of the disclosures, also weigh in favor of waiver. Government Exhibit I lists 58 separate documents that, according to the government,

---

[3]The Court rejects the government's assertion that its May 29, 2013 letter constituted a privilege log as required by Rule 45 of the Federal Rules of Civil Procedure with respect to the ATF-STL documents. The letter did not "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Rule 45(e)(2)(A)(ii), Fed. R. Civ. P. The government's argument that the letter is equivalent to a privilege log is refuted by the letter itself, which specifically acknowledges that the government had not provided the information necessary to enable petitioner to evaluate its claim of privilege and states that a privilege log is forthcoming.

amount to 570 pages.  <u>See</u> Reply at 4, n.1.  The government's letter of May 29, 2013 stated that in response to petitioner's subpoenas, 5,784 pages of documents were being produced from the ATF-STL file, and an additional 1,694 documents from other ATF branches.  Courts have declined to find a waiver where only a few privileged documents slip through otherwise stringent screening procedures.  <u>See</u>, <u>e.g.</u>, <u>Edelen v. Campbell Soup Co.</u>, 265 F.R.D. 676, 698 (N.D. Ga. 2010) (finding attorney-client privilege was not waived by Rule 502(b) where "only four pages out of a more than 2,000 page production were privileged, the documents were checked by three different attorneys prior to production, and counsel immediately sought the return of the documents once they discovered their mistake").  Here, in contrast, 58 documents consisting of 570 pages, approximately ten percent of the total pages produced from the ATF-STL file, should not have gone unnoticed if the government had conducted even a cursory review of the disc on which they were produced. Further, the government has not provided any evidence as to who or how many persons checked the documents prior to production.

The fourth factor is the promptness of measures taken to remedy the problem.  In evaluating promptness, the inquiry is when the disclosing party discovered or with reasonable diligence should have discovered the inadvertent disclosure.  <u>See</u> <u>Herndon v. U.S. Bankcorp Asset Mgmt., Inc.</u>, 2007 WL 781788, at *4 (E.D. Mo. Mar. 13, 2007).  The government contends it did not learn of the inadvertent disclosure until petitioner filed his Sealed Response on February 18, 2015, almost twenty-one months after the documents were produced.  Six days later, Assistant U.S. Attorney Matthew Drake sent petitioner's counsel an email stating it appeared petitioner might be in possession of a disc containing privileged ATF-STL documents.

In his Surresponse, petitioner disputes the government's assertion that it only learned of the disclosure in February 2015.  Petitioner states that the government's opposition to his motion to

compel, filed in October 2014, pointed to its disclosure of the 5,784 pages of Bates-labeled records described in the May 29, 2013 letter (see Doc. 182 at 4). Petitioner argues this indicates the government knew what it had disclosed. Second, petitioner states that when he took the deposition of ATF Special Agent Michael Johnson on September 16, 2014, one of the documents the government now claims is privileged (Bates-labeled ATF-STL 05013-05016) was marked as Deposition Exhibit 10 and discussed for several pages of the transcript, including comments and objections concerning the document by Assistant U.S. Attorney Christina Moore.[4]

Putting aside the issue of whether the government should have been on notice of the disclosure since the time it was made in May 2013, the Court finds that the government learned or should have learned of the disclosure at Agent Johnson's deposition on September 16, 2014, some five months before it asserted the inadvertent disclosure of privileged documents. The deposition was attended by Assistant U.S. Attorneys Moore and Drake as well as ATF Division Counsel Mark Curzydlo. Two of the documents listed on Exhibit I were marked as deposition exhibits and Agent Johnson was questioned about them for a period that spans seven transcript pages.[5] Deposition Exhibit 10 is marked "Limited Official Use," and petitioner's counsel specifically noted this while questioning Agent Johnson. (See Doc. 213-1 at 6.) Agent Johnson testified the document was an application for funding from the Organized Crime Drug Enforcement Task Forces. (Id. at 7.)

---

[4]Petitioner did not provide a copy of Agent Johnson's deposition transcript with his Surresponse in the "interest of brevity and to keep the record simple," but offered to provide a copy if the Court deemed it necessary. Surresponse at 7 (Doc. 204). Although the government did not seek leave of Court to file a surreply to address petitioner's assertion about the deposition, the Court ordered petitioner to provide the relevant deposition pages and he has done so. (See Doc. 213.)

[5]The documents in question are listed on the government's privilege log as Document 10 (ATF-STL 03245-03252) and Document 32 (ATF-STL 04683), and were marked as Deposition Exhibits 10 and 11, respectively. A partial duplicate of Document 10 was also produced and is listed as Document 54 (ATF-STL 05013-05016) on Exhibit I.

Counsel's questions and Agent Johnson's answers concerning Deposition Exhibit 11 indicate it was a National Firearms Act (NFA) document concerning Vic's Gun Corporation, including an inventory of firearms that were or should have been in its possession. (Id. at 9-11.) This line of questioning concerning Deposition Exhibits 10 and 11 should have put the government on notice of its alleged inadvertent disclosure.

The delay of five months between Agent Johnson's deposition and the government's assertion of privilege weighs in favor of a finding of waiver, as the government was put on notice but did not timely take action to rectify its error. See, e.g., Seger, 2010 WL 378113, at *6 (party's delay of nearly six months after disclosures to make a claim of privilege weighed in favor of a finding of waiver); Clarke v. J.P. Morgan Chase & Co., 2009 WL 970940, at **5-7 (S.D.N.Y. Apr. 20, 2009) (citing cases; finding waiver where defendant's failure to raise privilege more than two months after it learned or should have learned of the privileged document's disclosure was an "inexplicably long time."); cf. Pick v. City of Remsen, 2014 WL 4585732, at *5 (N.D. Iowa Sept. 15, 2014) (fourth factor weighed in favor of non-waiver where disclosing counsel contacted receiving counsel 34 minutes after learning of inadvertent disclosure); Herndon, 2007 WL 781788, at *4 (attempt to rectify error within one week of learning of inadvertent disclosure weighed in favor of finding non-waiver of privilege). As a result, the fourth factor weighs in favor of waiver.

Finally, as to the fifth factor, the government has not established that the overriding interests of justice would be served by relieving it of the consequences of its error. Parties, including the government, must recognize there are potentially harmful consequences if they do not take even minimal precautions to prevent the disclosure of privileged documents. Issues of fairness weigh in favor of waiver, because the government had ample opportunity to discover and assert the claimed privileged status of the documents listed in Exhibit I, but did not do so until twenty-one months after

it produced the documents and five months after it knew or should have known of the allegedly inadvertent disclosure. Petitioner has been in possession of these documents for two years and should not be forced to possibly alter his plans for presentation of his case at the evidentiary hearing to take into account the government's belatedly raised claim of privilege.

For these reasons, the Court concludes the acts and omissions of the government have waived any privilege that may have applied to the fifty-eight documents listed on Exhibit I.[6]

B. Certain Documents on Exhibit I are Barred from Disclosure by Statute

The conclusion that the government has waived all privileges with respect to the documents listed on Exhibit I does not resolve the issue whether disclosure of some of the documents is barred by federal statute. The government asserts that two statutes prohibit disclosure of some of the documents. The Court will address the two statutes and the separate documents at issue under each in turn.

1) *Tax Return Information - 26 U.S.C. § 6103*

The government asserts that a number of the documents it produced are not privileged but rather are barred from disclosure as tax return information under 26 U.S.C. § 6103.[7] Petitioner does

_____

[6]As a result, petitioner's request for a hearing to determine the applicability of privilege to the documents listed in Exhibit I is moot.

[7]The documents the government contends are prohibited from disclosure by 26 U.S.C. § 6103 are listed and numbered on Exhibit I as follows:

   2. ATF Form 5320.22, NFA Records Search; Bates No. 01858;

   4. Form 1512, Application for tax exempt transfer (not related to Baranski or Carmi); Bates Nos. 02682-02684;

   32. Memorandum, Analysis of NFA history [of Vic's Gun Corporation]; Bates No. 04683;

not respond directly to this assertion, but argues without citation to any supporting legal authority that he is entitled to obtain records relating to Vic's Gun Corporation ("VGC") because James Carmi is a de facto "Responsible Person" of VGC, a dissolved corporation, and petitioner has obtained a tax release from Carmi.[8]  Petitioner also argues that the government could redact information concerning the present ownership of the firearms and produce the remainder of the records.

Under the Internal Revenue Code, federal tax "'[r]eturns and return information shall be confidential' and are not subject to disclosure under ordinary circumstances.  26 U.S.C. § 6103(a) (1994)."  Taylor v. United States, 106 F.3d 833, 835 (8th Cir. 1997).  The Eighth Circuit has described the statute's definitions of "return" and "return information" as "rather broad."  Id. (citing 26 U.S.C. § 6103(b)).  "In addition to the expansive definition of return found in § 6103(b)(1), '§ 6103(b)(2) contains an elaborate description of the sorts of information related to returns that [the

---

36.  ATF Dept. of Treasury Special Tax Stamp (not related to Baranski or Carmi); Bates No. 04710;

37, 38.  ATF Form 5 - Fax, ATF Dept. of Treasury Application for Transfer (not related to Baranski or Carmi); Bates Nos. 04716, 04724;

42, 43, 46.  ATF Form 3, ATF Dept. of Treasury Registration to special taxpayer; Bates Nos. 04900, 04903, 04918;

44, 45, 47-49, 55-58.  ATF Form 3, ATF Dept. of Treasury Registration to special taxpayer (not related to Carmi or Baranski); Bates Nos. 04911, 04913, 04934, 04936, 04938, 05028-05029, 05035-05040, 05407-05408, 05778-05779.

[8]The government states that "ATF considers a 'responsible person' for a corporation as anyone directing management and policies of the business as it pertains to firearms such as corporate officers, shareholders, board members or employees with legal authority."  Response at 24, n.9.

IRS] is compelled to keep confidential,' <u>Church of Scientology v. IRS</u>, 484 U.S. 9, 15 (1987)—or

is permitted to disclose pursuant to an exception." <u>Taylor</u>, 106 F.3d at 835.[9]

The confidentiality of tax return information is not absolute, however. "The bulk of § 6103

constitutes exceptions to the general rule of non-disclosure." <u>Id.</u> at 836; <u>see</u> <u>Church of Scientology</u>,

484 U.S. at 15 ("Subsections (c) through (o) of § 6103 set forth various exceptions to the general

rule that returns and return information are confidential and not to be disclosed. These subsections

provide that in some circumstances, and with special safeguards, returns and return information can

be made available . . . ."). The statute also provides that return information can be disclosed to

private individuals under specific circumstances. Section 6103(e)(7) provides in pertinent part:

(e) Disclosure to persons having material interest—

----

[9]A "return" is defined in § 6103(b)(1) as "any tax or information return, declaration of estimated tax, or claim for refund" including supporting schedules, attachments, and lists. Section 6103(b)(2) supplies a more extensive definition of "return information," which includes:

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and

(B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110, . . . .
but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.

26 U.S.C. § 6103(b)(2). "'[R]eturn information' has, in the words of some commentators, 'evolved to include virtually any information collected by the Internal Revenue Service regarding a person's tax liability.'" <u>Landmark Legal Found. v. I.R.S.</u>, 267 F.3d 1132, 1135 (D.C. Cir. 2001) (quoted source omitted).

. . . .

(7) Return information.—Return information with respect to any taxpayer may be open to inspection by or disclosure to any person authorized by this subsection to inspect any return of such taxpayer if the Secretary determines that such disclosure would not seriously impair Federal tax administration."

The first inquiry is whether the documents the government asserts are barred from disclosure by 26 U.S.C. § 6103 are "return information" within the meaning of the statute. Neither party has addressed which of them bears the burden to establish the propriety of a decision to withhold information under § 6103, or the appropriate standard of review the Court should apply in this case.[10] The Eighth Circuit does not appear to have had an opportunity to address these issues. Under § 6103, deference is accorded to a decision not to disclose information by virtue of the Administrative Procedure Act, and "court review is limited to determining if the agency decision not to disclose was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A)." Grasso v. I.R.S., 785 F.2d 70, 73 (3d Cir. 1986); accord Linsteadt v. I.R.S., 729 F.2d 998, 999 (5th Cir. 1984) ("If § 6103 provides the sole measure of the duty, on judicial review the claimant has the burden of proving an abuse of the agency's discretion in nondisclosure."); White v. I.R.S., 707 F.2d 897, 900 (6th Cir. 1983); King v. I.R.S., 688 F.2d 488, 495 (7th Cir. 1982); Betke v. I.R.S., 1985 WL 8649, at *3 (D. Neb. July 17, 1985). In the absence of any argument or contrary authority from the parties on this issue, the Court will apply this standard of review.[11]

---

[10]The parties' failure to address the burden of proof and appropriate standard of review are fundamental omissions that inappropriately burden the Court with much of the responsibility to frame the issues and conduct the research necessary to resolve the matter before it.

[11]In contrast, in actions brought under the Freedom of Information Act ("FOIA"), the government agency has the burden to prove that the information it did not disclose falls within one of the nine FOIA exemptions. See 5 U.S.C. § 552(a)(4)(b). Exemption 3 of FOIA incorporates nondisclosure protections established in other federal statutes. 5 U.S.C. § 552(b)(3). Many cases analyze nondisclosure under 26 U.S.C. § 6103 in the context of FOIA Exemption 3. See, e.g.,

The government states that NFA application forms constitute "returns" and contain "return information" within the meaning of § 6103, citing <u>Lomont v. O'Neill</u>, 285 F.3d 9, 15 (D.C. Cir. 2002) (completed application to make a firearm, once filed with ATF, is a "return" that contains "return information"). The government further states that § 6103(b)(2) covers information compiled from third-party sources and internal agency records to determine possible liability under Title 26, citing <u>Lehrfeld v. Richardson</u>, 132 F.3d 1463, 1465 (D.C. Cir. 1998) (IRS reasonably determined that documents received or creating during an investigation of organization seeking tax-exempt status are "return information" within the meaning of § 6103). The government asserts that NFA records searches are "return information" because a "negative" response to a search request indicates that the firearms in question are not registered in the National Firearms Registration and Transfer Record, <u>see</u> 26 U.S.C. § 5841, and are therefore subject to tax liability and criminal penalty. Finally, the government asserts that § 6103 applies to ATF's reports of investigation containing information compiled to determine whether a firearm is covered by the NFA or whether the firearm was manufactured, possess or transferred in violation of the NFA.

Because petitioner has had possession of the documents listed on Exhibit I for two years, the Court assumes he is familiar with their contents. Petitioner does not contend in his Sealed Response that any of the documents are not returns or do not contain return information. In his Surresponse, petitioner argues only that Document 2, an NFA Records Search for "among others Vic's Gun Corp.," does not include any information protected by 26 U.S.C. § 6103 "other than some personal identifier[s]". Surresponse at 6.

---

DeSalvo v. I.R.S., 861 F.2d 1217, 1218 (10th Cir. 1988); Barney v. Internal Revenue Service, 618 F.2d 1268, 1272-73 (8th Cir. 1980). Because the instant matter is not a FOIA action, however, the Court does not apply FOIA's burden of proof.

As stated above, the statute's definitions of "return" and "return information" are broad, Taylor, 106 F.3d at 835, and have been construed expansively, Landmark Legal Foundation v. I.R.S., 267 F.3d 1132, 1135 (D.C. Cir. 2001). See, e.g., Betke, 1985 WL 8649, at *3 (IRS Form 3210 document transmittal sheets, forms used to transmit the tax returns of the plaintiff and other taxpayers from one I.R.S. office to another, were return information properly withheld under § 6103). The Court finds that the NFA records search form, application forms, registration forms and special tax stamp identified above are returns and/or return information prohibited from disclosure by 26 U.S.C. § 6103, see Lomont, 285 F.3d at 15; Lehrfeld, 132 F.3d at 1465. Document 32, the memorandum titled "Analysis of NFA History," contains return information because it includes taxpayer identification information and reports data received or recorded with "respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense[.]" 26 U.S.C. § 6103(b)(2).

Petitioner's assertion that Document 2 is not protected by § 6103 because it only includes "personal identifiers" is without merit. The identity of third party taxpayers is exempt under § 6103. See DeSalvo v. I.R.S., 861 F.2d 1217, 1218 (10th Cir. 1988) (a taxpayer's identity is unambiguously within the scope of return information). "This is so even if the third person identified in the documents is a relative of the person making the . . . request. Disclosure of any third person's information concerning that person's taxes requires a signed consent from the third person. See 26 U.S.C. § 6103(c)." Rollins v. United States Dep't of Justice, 1992 WL 12014526, at * 5 (S.D. Tex. June 30, 1992). Petitioner's argument that the government could simply redact taxpayer identifying information from the documents is also without merit. The Supreme Court has squarely rejected this argument. "Congress did not intend the statute to allow the disclosure of otherwise confidential

return information merely by the redaction of identifying details," Church of Scientology, 484 U.S. at 16, and the "removal of identification from return information would not deprive it of protection under § 6103(b)." Id. at 18. Because "such deletion would not make otherwise protected return information discloseable, [ATF] has no duty . . . to undertake such redaction." Id.

Finally, the Court rejects petitioner's argument that he is entitled to disclosure of VGC's records on the basis that James Carmi provided him with a tax release. The government states that in VGC's filings with ATF to obtain and maintain its federal firearms license, it listed the responsible persons and principals as Jeffrey Bach, David Carmi (James Carmi's brother), and Vickie Carmi (James Carmi's former spouse), but James Carmi was not listed as being affiliated with the business, likely because of his status as a convicted felon. Petitioner responds that VGC is a dissolved Missouri corporation which was the "legal/licensed base of Carmi's firearms operations, VGC's place of business and corporate office was Carmi's residence; and ATF records of Carmi's investigation clearly show VGC as being the target of the investigation solely because of Carmi." Sealed Response at 8. Petitioner makes the conclusory, unsupported argument that "under those facts Carmi was the defacto Responsible Person of VGC, and any claim of privilege should be rejected." Id.

Section 6103 provides that if a corporation has been dissolved, its return shall be disclosed to "any person authorized by applicable State law to act for the corporation or any person who the Secretary finds to have a material interest which will be affected by information contained therein." 26 U.S.C. § 6103(e)(1)(D)(v). The Court in independent research has been unable to find any cases interpreting this provision. The legislative history of the Tax Reform Act of 1976, Pub.L. 94-455, 90 Stat. 1520, of which amendments to § 6103 are a part, indicates that "[o]ne of the major purposes in revising § 6103 was to tighten the restrictions on the use of return information by entities other

than" the IRS.  <u>Church of Scientology</u>, 484 U.S. at 16.  The legislative history with respect to

§ 6103(e)(1)(D)(v) does not provide support for petitioner's assertion that James Carmi is within the

category of persons with a "material interest" in the returns or return information of VGC.[12]

---

[12]The legislative history of § 6103(e)(1)(D)(v) states as follows:

j. Taxpayers With a Material Interest

Present law

Under the regulations, income tax returns presently are open to the filing taxpayer, trust beneficiaries, partners, heirs of the decedent, etc.  'Return information', as opposed to the tax returns themselves, is only available to the taxpayer, etc., at the discretion of the IRS.

Also, the statute specifically authorizes the inspection of a corporation's income tax returns by a holder of 1 percent or more of the corporation's stock. (Sec. 6103(c).)

Reasons for change

The committee decided that persons with a material interest should continue to have the right to inspect returns and, where appropriate, return information to the same extent as provided under current regulations.

Explanation of change

Under the committee amendment, disclosure could be made, upon written request, to the filing taxpayer, either spouse who filed a joint return, the partners of a partnership, the shareholders of subchapter S corporations, the administrator, executor or trustee of an estate (and the heirs of the estate with a material interest that may be affected by the information), the trustee of a trust (and beneficiaries with a material interest), persons authorized to act on behalf of a dissolved corporation, a receiver or trustee in bankruptcy, and the committee, trustee or guardian of an incompetent taxpayer.

The provision in present law authorizing a one percent shareholder to inspect a corporation's return would also be retained.

Return information (in contrast to 'returns') could be disclosed to persons with a material interest only to the extent the IRS determines this would not adversely affect the administration of the tax laws.

S. Rep. No. 94-938(I), at 339.

Petitioner does not assert that James Carmi would be authorized to act on behalf of the dissolved corporation VGC under state law, and petitioner does not provide any legal authority to support his argument that Carmi is a de facto "responsible person" for VGC based on Carmi's unlawful operation of the corporation as a convicted felon. The Court therefore concludes that neither petitioner nor Carmi are persons with a "material interest" entitled to obtain VGC's returns or return information, including NFA records. Petitioner does not assert that he has obtained a signed tax release form from any person who is authorized by Missouri law to act on behalf of the dissolved corporation VGC, or has a material interest in VGC's returns or return information under 26 U.S.C. § 6103.

Because the documents at issue are returns or return information, the next inquiry is whether a decision to withhold them would be arbitrary, capricious or an abuse of discretion. The Court concludes that Documents 2, 4, 32, 36-38, 42, 43-49, and 55-58 as listed on Exhibit I are prohibited from disclosure as returns or return information under 26 U.S.C. § 6103. As a result, it would not have been arbitrary, capricious, or an abuse of discretion for the ATF to withhold them from production, as neither Carmi nor petitioner are authorized to obtain the records under § 6013, and petitioner has not provided tax release forms from third-party taxpayers whose return information the documents contain.

Because documents prohibited from disclosure under § 6103 were produced rather than withheld, petitioner will be ordered to (1) return all copies of these documents to the government or destroy them; and (2) take reasonable steps to retrieve any copies of the documents that petitioner has provided to anyone else. See Fed. R. Civ. P. 26(b)(5)(B). Petitioner shall file a notice with the Court describing his compliance with this order within ten days of its date. Petitioner may not use or disclose any information gained from these documents.

2) *Privacy Act, 5 U.S.C. § 552a*

The government asserts that two documents listed on Exhibit I are protected from disclosure by the Privacy Act of 1974, 5 U.S.C. § 552a. These are Documents 6 (ATF-STL 03186-03191) and 31 (ATF-STL 04255-04259). The privilege log describes the documents as background history checks titled "Treasury Enforcement Security System Search - Person Subject Entry," and states the documents are not responsive to the subpoena as they do not relate to Carmi or Baranski, and are protected from disclosure pursuant to the Privacy Act.

The Privacy Act requires written consent "before information in individual records may be disclosed, unless the request falls within an explicit statutory exception[.]" Detroit Edison Co. v. N.L.R.B., 440 U.S. 301, 319 n.16 (1979). The Privacy Act is "intended to provide to a particular individual documents that would not be available to the public at large, namely, documents containing 'information about [that] individual.' § 552a(a)(4)." United States Dep't of Justice v. Julian, 486 U.S. 1, 21-22 (1988) (Scalia, J., dissenting).

The Privacy Act places the burden to justify withholding of records on the agency, and provides for de novo review of decisions to withhold. See 5 U.S.C. § 552a(g)(3)(A); Louis v. United States Dep't of Labor, 419 F.3d 970, 977 (9th Cir. 2005); Becker v. I.R.S., 34 F.3d 398, 408 n.26 (7th Cir. 1994); Doe v. United States, 821 F.2d 694, 697-98 (D.C. Cir. 1987) (en banc). Thus, no deference is due an agency's determination of which records to disclose and which are exempt. Doe v. Chao, 540 U.S. 614, 618-19 (2004) (distinguishing de novo review from "any form of deferential review").[13]

---

[13]The Court recognizes that the Privacy Act places the burden on the agency to justify the withholding of documents in the context of a suit brought under 5 U.S.C. § 552a(g)(1)(B). Because Rule 45 places the burden to establish privilege on the subpoenaed party asserting it, and in the absence of any discussion from either party on the issue of the burden of proof, the Court concludes

ATF does not explain which provision of the Privacy Act controls its response to petitioner's subpoena, and it has not provided any supporting legal authority – or even made any argument – to meet its burden to justify withholding Documents 6 and 31. The Court notes that the Declaration of ATF Special Agent Michael McGrath states that an ATF criminal investigative case file related to Carmi and Baranski was delivered to the U.S. Attorney's Office in St. Louis, which then prepared a privilege log of items that were in the investigative case file but were not produced.[14] (Gov't Ex. H; Doc. 195-8 at 1, ¶ 4.) Thus, the two documents at issue were contained within the Carmi/Baranski investigative file. Based on Exhibit I's description of the documents as not responsive because they do not relate to Carmi or Baranski, it appears the documents were withheld on the basis that they concern a third person.

In <u>Voelker v. Internal Revenue Service</u>, 646 F.2d 332 (8th Cir. 1981), the plaintiff sought information in his record held by the Internal Revenue Service. The IRS withheld portions of plaintiff's record that included information pertaining to a third party. The Eighth Circuit reversed the district court's determination that the documents could be withheld because they pertained only to a third party and not to the plaintiff. The Eighth Circuit held that the IRS did not have discretion to withhold information contained in the requesting individual's record on the basis that the information did not pertain to that individual. The Eighth Circuit resolved the conflicting privacy interests of two persons in a single document by finding that the requesting plaintiff was entitled to the entire document, including the information pertaining to the other person, reasoning:

> [The Privacy Act] clearly states that an individual is entitled to his record, as well as to other information that pertains to him. There is no justification for requiring that

---

it is appropriate to place the burden on the ATF to justify its attempt to claw back Documents 6 and 31.

[14]The documents were, of course, actually produced rather than withheld.

information in a requesting individual's record meet some separate "pertaining to" standard before disclosure is authorized.  In any event, it defies logic to say that information properly contained in a person's record does not pertain to that person, even if it may also pertain to another individual.

Voelker, id. at 334.

Although the Privacy Act often limits scrutiny of personal information held by the government, "when the individual to whom the information pertains is also the individual requesting the information, the [Privacy Act] presumes that disclosure to that individual will occur."  Wren v. Harris, 675 F.2d 1144, 1146 (10th Cir. 1982) (per curiam) (citing 5 U.S.C. § 552a(d)(1)).  "Stated otherwise, the [Privacy Act] provides rights to the individual with respect to his own records greater than the rights of the public generally."  Id.  "If Congress had intended to shield from disclosure information in one person's record that pertains to another person, it could have and presumably would have added an exemption to sections 3(j) [§ 552a(j)] and 3(k) [§ 552a(j)]."  Voelker, 646 F.2d at 335.

As stated above, the ATF fails to invoke any of the explicit exemptions from access that Congress provided in the Privacy Act, and nothing in the McGrath Declaration establishes that a Privacy Act exemption applies such that documents contained in the ATF-STL's investigative file on petitioner and Carmi can be withheld from disclosure.  Based on the language of the Privacy Act and the Eighth Circuit's interpretation of it in Voelker, the Court concludes the ATF has not met its burden to justify its effort to claw back Documents 6 and 31.  Petitioner may retain and use those documents.

C.  The Appropriations Act Bars Production of Firearms Transfer Paperwork

The Order also directed the government to explain "why it does not have the Vic's Gun Corporation firearms transfer paperwork that was previously seized."  Order at 10.  This refers to

paperwork the ATF seized from James Carmi's residence during execution of a criminal search warrant in approximately 2000.

As a threshold matter, the government responds that it does not know whether "transfer paperwork" was seized or not, as this is only petitioner's assertion. The government states that if VGC "transfer paperwork" was seized in 2000, any official transfer records such as ATF Form 4473 Firearms Transaction Records or Acquisition and Disposition Books would have been sent to other ATF branches and divisions such as the ATF Out-of-Business Records Center, a section of the National Tracing Center located in West Virginia.

The government further responds that under the Consolidated and Further Continuing Appropriations Act of 2012, Public Law 112-55, 125 Stat. 552 (Nov. 18, 2011) (the "Appropriations Act"), some firearms transfer records are prohibited from disclosure regardless of whether a release is provided, except to certain law enforcement, national security or intelligence recipients. The government states that the Appropriations Act encompasses transfer records in addition to and independent of records covered by Title 26 restrictions, and restricts the disclosure of any part of the contents of the Firearms Tracing System or any information required to be kept by Federal Firearms Licensees pursuant to 18 U.S.C. § 923(g), or reported pursuant to 18 U.S.C. §§ 923(g)(3) and 923(g)(7). Finally, the government states that the U.S. Attorney's Office directed the ATF to search for such records and, if any were located, it would notify petitioner and request that he issue

a subpoena for the records as he had not previously done so.[15]  Petitioner does not offer any response to the government's arguments concerning the Appropriations Act.

The Appropriations Act bars disclosure of certain firearms transfer records, as it specifically states that no funds appropriated thereunder "may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the [ATF] or any information required to be kept by licensees pursuant to section 923(g) . . . and all such data shall be immune from legal process . . . ."  Pub. L. No. 112–55, 125 Stat. 552, 609-10 (2011).  Here, petitioner seeks "transfer paperwork," presumably copies of VGC's Acquisition and Disposition books and/or federal firearms transfer forms.  A federal firearms licensee is required to keep these items pursuant to 18 U.S.C. § 923(g).  See 18 U.S.C. § 923(g)(1)(A); Caruso v. United States Bureau of Alcohol, Tobacco & Firearms, 495 F. App'x 776, 778 (9th Cir. 2012).  The Appropriations Act explicitly bars the ATF from disclosing any information required to be kept by licensees under this section.  See Caruso, 495 F. App'x at 778; Wilson v. United States, __ F.Supp.3d __, 2015 WL 1517521, at *6 (D.D.C. Mar. 31, 2015) (citing cases).

The firearms transfer paperwork petitioner seeks to discover falls under the statutory language of the Appropriations Act.  As a result, the ATF is not required to disclose any VGC firearms transfer paperwork to petitioner and the Court does not require any further response or action by the government or ATF on this issue.

---

[15]The government's Reply states that ATF informed the U.S. Attorney's Office "there are no records held in the ATF Out of Business Records center concerning Vic's Gun Corp that are responsive to the subpoenas issued to other ATF offices."  Reply at 3.  There is no affidavit or declaration submitted in support of this statement and therefore it is not evidence.

D.  Title 26 U.S.C. § 6103 Bars Production of Documents in Response to Subpoena to Custodian of Records, NFA Branch of ATF

In February 2013, petitioner issued a subpoena duces tecum to the Custodian of Records of the NFA branch of the ATF ("ATF-NFA"), seeking forty-four items for which petitioner sought "copies of the registrations" for specific firearms and ammunition.  (See Gov't Ex. D.)  The government's Response states that ATF-NFA searched for the records and that the U.S. Attorney's Office letter to petitioner's counsel of May 29, 2013 detailed the ATF-NFA's response as follows:

> Concerning the NFA subpoena, I discussed matters with ATF NFA personnel and I am told the following.  Based upon the list of items on your subpoena, "copies of the registrations" for the following items were not found pursuant to a search of ATF records: Item No.: 1, 3, 4, 11, 13, 15, 17-19, 21, 23, 29, 31, 37, 39-44.
>
> A search for records the remaining items did reveal some information.  However, I am informed that records for the remaining items on your subpoena do not come back to Mr. Baranski.  The records are considered tax information and protected from disclosure.  Thus, since they are not associated with Mr. Baranski, ATF will only release such information with a properly executed tax waiver from the individual(s) to whom the records relate.  I am enclosing a copy of such a release.

Gov't Ex. E at 1-2.  The government asserts that this information was sufficient to comply with the privilege log requirement of Rule 45(e)(2)(A), as the letter "made a claim concerning why the records were being withheld, discussed the nature of the withheld documents, and enabled Petitioner to assess the claim."  Gov't Response at 8.  The government also states that petitioner has not returned any executed tax waiver forms.

The government supplemented the information set forth in the May 29, 2013 letter with the Declaration of Andrew Ashton, NFA Branch Specialist, filed as Government Exhibit F to its Response.  The Ashton Declaration states that 26 U.S.C. § 5841 provides the United States Attorney General or her authorized delegate shall maintain a central registry of all firearms not in the possession or under the control of the United States which come within the purview of 26 U.S.C.

Chapter 53. This registry is known as the National Firearms Registration and Transfer Record ("NFRTR"). The Ashton Declaration states that to search for a specific item in the NFRTR, as requested by petitioner, a serial number must be provided. It further states that Mr. Ashton determined Items 2, 5-9, 10, 12, 14, 16, 20, 22, 24-28, 30, 32-36 and 38 listed on the subpoena attachment were located in the NFRTR as registered to a party or entity other than petitioner; Items 1, 3, 4, 11, 13, 15, 17-19, 21, 23, 29 and 31 could not be located as registered in the NFRTR; and no search could be performed for Items 37, and 39-44 because no serial number was provided for those items. Gov't Ex. F at 1-2.

The government's Response also states that during meet and confer discussions, petitioner asserted he was entitled to obtain any NFA records concerning Vic's Gun Corporation upon James Carmi signing an appropriate NFA release, but the government disagreed because VGC registration records were in names of third parties other than James Carmi or petitioner. In addition, the government states that the records are prohibited from disclosure by 26 U.S.C. § 6103. Petitioner's Sealed Response argues that the May 29, 2013 letter is insufficient to constitute a privilege log, but does not challenge the substance of the government's claims that the documents held by ATF-NFA are prohibited from disclosure by § 6103.

The Court need not determine whether the letter of May 29, 2013 was sufficient to constitute a privilege log in response to petitioner's subpoena to ATF-NFA, and it is unclear why the government makes this assertion. The letter does not claim that the subpoenaed ATF-NFA records are privileged, but rather that they are prohibited from disclosure to a third party absent an

appropriate waiver from the registered party. The letter does not state that the prohibition derives from 26 U.S.C. § 6103, but the government's Response clarifies this.[16]

As stated above, firearms records required to be kept under 26 U.S.C. chapter 53 are prohibited from disclosure by 26 U.S.C. § 6103, except to the person involved or under limited circumstances that do not apply here. For the reasons discussed above at pages 19-21, the Court rejects petitioner's assertion that he is entitled to obtain records relating to VGC based on James Carmi's alleged status as a "de facto responsible person" for VGC or as a person with a material interest in VGC's returns and return information. As a result, ATF need not produce any records pursuant to the subpoena issued to ATF-NFA.

E. ATF Emails are Not Reasonably Accessible and Need Not be Produced

Item 60 on the list attached to petitioner's motion to compel seeks "Agent notes as well as records between ATF agents (to include emails) concerning Carmi and/or Baranski" for the period of October 2000 through December 31, 2009. The Order directed the parties to "meet and confer concerning the scope and accessibility of the emails, what methods will be efficient in identifying discoverable emails, the format in which they are stored and would be produced, as well as the potential burdens and cost of production." Order at 10-11.

The government states that a meet and confer discussion was held concerning emails on January 14, 2015, at which it informed petitioner of the following information with respect to ATF email discovery: (1) ATF changed its computer server database storage systems in October 2008 and no data remains on its servers prior to October 2008, so no emails can be produced for the period between 2000 and 2008; (2) for the period between October 2008 and December 2009, ATF

---

[16]As quoted above, the letter states only that the "records are considered tax information and protected from disclosure."

may have emails saved on backup data tapes; (3) to conduct an effective search of the backup tapes, ATF must have specific users identified, a range of dates to search, and explicit search terms; (4) using this information, it will likely take an ATF contractor approximately one forty-hour work week to search and retrieve data from backup tapes covering one user's account for a period of one month; (5) this work would be done by an ATF contractor at the rate of approximately $125 per hour; (6) the retrieved data must be imported into a third party database tool by another contractor to run the search terms, at an estimated cost of $100 per gigabyte of raw data and $79 per hour for the actual search, in addition to the $125 hourly rate for the other contractor; and (7) the estimated cost to ATF for a contractor to search and retrieve a single user's email data for a period of one month is $5,000 of direct cost, plus $1,100 for the search process for each user for each month's worth of data (assuming 500 MB of data per user per month and eight hours to search/format). This government supports this information with the Declaration of Walter E. Bigelow, Chief of the Information Technology Systems Management Division with the Office of Science and Technology of the ATF in Washington, D.C., filed as Exhibit N to the government's Reply.[17]

The government states that the U.S. Attorney's Office asked petitioner to identify (1) a list of employees or agents whose email would be searched, and (2) specific search terms, but petitioner declined to do so. The government also states that the remaining potentially searchable emails cover

---

[17]The Bigelow Declaration also states that to conduct a search, ATF must determine on what server and data store a user's account was located during the given time frame, and search backup tapes for that respective server/data store. Once a specified user's information is found on a backup tape, it must be copied onto a duplicate exchange server and exported. "The greater the number of users identified to search . . . increases the time and labor needed for a viable and responsive search inquiry." Gov't Ex. N at 2, ¶ 8.b. Further it is "equally possible, and equally not possible, that another user in the target population can be restored at the same time, from data on the same tape." Id. at 3, ¶ 8.g.

a time period approximately six years after petitioner's underlying criminal trial that forms the principal basis for the allegations in his complaint, calling into question the relevance and usefulness of the data. The government asks for a hearing to clarify the issue of email discovery and for direction as to how to proceed.

Petitioner responds that the subpoena "provides adequate search terms and it is reasonably limited in its scope to allow the government to formulate its own search terms, to comply with the Court's Order and the subpoena." Pet.'s Sealed Response at 10-11. Petitioner also states that if he were to provide search terms to the government he would "run[] the risk of the government misconstruing his terms and accidently overlook more responsive records." Id. at 11.

The government replies that both sides were ordered to "meet and confer concerning the scope and accessibility of the emails" and states it has attempted to work with petitioner regarding email discovery, but no agreement has been reached and petitioner's assertion that the government should choose search terms without his input is untenable, as the expense and time required to search emails make it essential for the parties to agree on search terms, so the discovery would not have to be repeated. As previously stated, the Bigelow Declaration was submitted with the government's Reply. Although petitioner filed a Surresponse, it does not respond to the Bigelow Declaration or otherwise address the issue of email discovery.

Rule 45(e)(1)(D), Fed. R. Civ. P., provides that the "person responding" need not produce electronically stored information ("ESI") if it is "not reasonably accessible because of undue burden or cost." The burden to show that ESI is not reasonably accessible is on the person responding. Even if such a showing is made, a court "may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery." Id. Such conditions may include cost sharing. See Rule

26(b)(2) Advisory Committee Note (2006 Amendment). The Rule requires that a court limit discovery to what is proportional to the needs of the case before it, and provides that on a party's motion or the court's own initiative,

> the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Rule 26(b)(2)(C); see Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC, __ F.3d __, 2015 WL 1881199, at *14 (8th Cir. Apr. 27, 2015) (quoting Rule 26(b)(2)(C)).

The Order did not direct ATF to produce the requested emails, but instead directed the parties to meet and confer concerning, among other things, the emails' scope and accessibility and the potential burdens and cost of production. The record now being more fully developed, the Court finds that ATF has shown the emails are not reasonably accessible because of undue burden and cost. The Bigelow Declaration describes the two-person process for attempting to retrieve email data from backup tapes, and estimates it will take one forty-hour work week to search one month's worth of emails for one user, and would cost $6,100 to search the tapes and produce discovery of one user's emails for a period of one month. Because petitioner seeks emails covering a fourteen-month period, the cost to review and produce emails for one user would be approximately $85,400 and would require fourteen weeks of ATF contractor or employee work.

Having concluded that the ATF emails are not reasonably accessible, the Court will not order them produced as petitioner has not made an attempt to show good cause for their production. See Rule 45(e)(1)(D). In addition, the limitations of Rule 26(b)(2)(C) and the following factors inform the Court's decision. The proportionality requirement of Rule 26(b)(2)(C) depends in part on the nature of the information sought. Here, petitioner seeks emails that are far removed from what is

available in the normal course of ATF's activities, as the emails are six to eight years old and stored on backup tapes designed for restoring computer systems in the event of disaster. Production of the emails will involve substantial costs and time and the active intervention of computer specialists, as detailed in the Bigelow Declaration. Further, the Bigelow Declaration states that the emails must be searched through specific users. (See Gov't Ex. N at 2, ¶¶ 8a., b.) Petitioner does not dispute this, but has not identified any user(s) whose emails should be searched and therefore his discovery request is not sufficiently specific.

In addition, the cost and burden associated with obtaining the emails cannot be justified in the absence of some showing by petitioner of a likelihood that the emails may contain significant information to resolve issues presented by his case. Petitioner has obtained thousands of pages of documents from ATF through discovery, and there is no way to know whether information potentially available from the emails would duplicate that which has already been produced. It seems questionable whether emails from October 2008 through December 2009 would be of critical importance or usefulness to petitioner's case, given the nature of his claims and the fact that his criminal trial ended in November 2002, the appeal was decided in October 2003, and his petition for a writ of certiorari was denied in May 2004. Petitioner has not offered any arguments to establish a likelihood that the ATF emails will have importance or usefulness to his case.

For these reasons, the Court will deny petitioner's motion to compel the ATF to produce emails pursuant to his subpoena for the period October 2000 through December 2009. As a result, the government's request for a hearing with respect to email discovery is moot.

F.  ATF Kansas City Division Office Informant File on James Carmi Must be Produced Pursuant to a Protective Order

In opposing petitioner's motion to compel, the government stated it had not produced documents found in ATF's Kansas City Division Office concerning James Carmi's role as a confidential informant because (1) records held at ATF Kansas City were not part of petitioner's subpoena to ATF-STL, (2) ATF records of confidential informant matters are privileged and not discoverable, and (3) the records relate to investigations completely unrelated to petitioner's case and concern Carmi's role as an informant beginning in 2004, after Carmi was released from prison for his conviction that was related to petitioner's underlying case.  With respect to these records, the Court ordered as follows:

> To the extent the government's claim of privilege concerns records or documents held by the ATF Kansas City Division, it need not produce a privilege log because as [sic] those records or documents would be outside the scope of petitioner's subpoena to ATF-STL, *unless* they are responsive to any of the other four subpoenas petitioner has served on ATF.  If the documents are responsive to any subpoena served on ATF, the government must either produce the documents or provide a privilege log.  The government is reminded that the Court has permitted discovery in this matter concerning James Carmi's role as a confidential informant.

Order at 12.

The government's Response explains that the "ATF St. Louis Field Office no longer maintained confidential informant files concerning James Carmi.  Rather, any such file was maintained in ATF Kansas City Division Office."  Response at 30 (emphasis added).  The government states that it requested ATF Kansas City to search for any records relating to Carmi as a confidential informant, and that the U.S. Attorney's Office now has custody of the entire ATF Kansas City informant file on Carmi (the "CI file").[18]  The government states that ATF Kansas City

_____

[18]The government submits the Declaration of Denise Lough, a Senior Operations Officer with ATF Kansas City, see Gov't Ex. J, to support ATF's assertion that all documents in ATF

requests any disclosure of the CI file be protected either through a claim of privilege or use of a protective order. The government states that its counsel contacted petitioner's counsel and (1) inquired whether petitioner "would accept a stipulation to some of the facts contained in the informant file in lieu of litigation concerning the applicability of a privilege that may attach to the records," or in the alternative, (2) offered to disclose the records to petitioner in conjunction with an agreed-upon protective order. Gov't Response at 31. The government states that petitioner responded,

> In reference to Mr. Carmi's Confidential Informant file, it is our position that government reliance on ATF either through discovery or in response to the subpoena denied that Mr. Carmi was employed as a C.I., and only after the deposition of Mr. Raoul Williams during which it was clearly established that Mr. Carmi had been employed as Confidential Informant and been paid for his services, existence of such file was admitted; again it is our position that the Court in its Order clearly articulated the options available to the government.

Gov't Response at 31.[19]

The government states it interpreted this response as indicating petitioner's unwillingness to agree to either a stipulation or a protective order. Id. The government reiterates that petitioner did not issue a subpoena to ATF Kansas City, but states it will assert a privilege claim, provide a privilege log, and produce the records for an *in camera* inspection by the Court. The government requests a hearing on the applicability of the privilege.

Petitioner's Sealed Response does not explicitly address the CI file or the government's claim of privilege for that file. However, at the end of a paragraph discussing the separate issue of email discovery, petitioner states:

---

Kansas City's possession concerning James Carmi as a confidential informant have been produced to the U.S. Attorney's Office.

[19]The government does not indicate the source of this quotation. Petitioner does not dispute its accuracy, however.

> Baranski has no objection to the government seeking protective orders that prevent certain confidential files responsive to his subpoena from being made public, however, he is opposed to unsubstantiated and blanket demands by the government to protect certain responsive records the withholding of which serves no important governmental interest and/or purpose.

Pet.'s Sealed Response at 11. The Court interprets this statement as meaning that petitioner consents to receive the CI file subject to a protective order.

The government filed a privilege log listing the CI file documents as an exhibit to its Reply memorandum. See Gov't Ex. M. The privilege log lists twenty documents and asserts that each is withheld pursuant to "28 C.F.R. 1626(b)(4) & (5); agency disclosure of confidential informant (CI) and investigatory techniques/law enforcement procedures record." The oldest document listed is dated October 12, 2004, and the most recent is dated January 23, 2008. Petitioner's Surresponse does not mention Exhibit M or the government's assertion of confidential informant and law enforcement privileges.

The Court ordered the government to either (1) produce the CI file, or (2) produce a privilege log. Order at 12. The government has done the latter. Petitioner has not filed a motion to compel or for sanctions with respect to the documents listed in the privilege log, although the filing of such motions would be procedurally appropriate. See Rule 45 Advisory Committee Note (1991 Amendment); 9 Moore's Federal Practice, § 45.61[1]. It is possible petitioner believes that because the government offered to produce the CI file subject to a protective order, and he has stated he does not object to the government seeking a protective order, there is no present dispute concerning the CI file.[20]

---

[20]Petitioner must ensure that his position on disputed issues is clearly articulated to the Court.

The Court recognizes that petitioner did not direct a subpoena to ATF Kansas City, but finds the government waived any objection when it offered to produce the CI file to petitioner subject to a protective order. The Court will order the government to submit a proposed protective order with respect to the CI file, in a form agreed upon by petitioner if possible. Following issuance of a protective order, the Court will direct the government to produce the documents on Exhibit M. As a result, the Court need not hold a hearing on the privilege issue or conduct an *in camera* examination of the documents listed on Exhibit M.

G. Possible Existence of Other Responsive Materials

Petitioner continues to assert that additional ATF documents and recordings are referenced in documents that have been produced, but the referenced documents and materials have not been produced in response to his subpoenas. In response to the Order, the government submitted declarations from ATF personnel which state under penalty of perjury that all documents responsive to petitioner's subpoenas have been provided to the U.S. Attorney's Office in St. Louis.[21] The declarations state that to the best of the declarants' knowledge, no additional records exist at the respective ATF offices that are responsive to petitioner's subpoena. The government also submitted the Declaration of Andrew Ashton, NFA Branch Specialist with the ATF's Firearms and Explosives Services Division, concerning petitioner's subpoena for items listed in the National Firearms Registration and Transfer Record. This declaration details the subpoenaed items that were located in the NFRTR, those that were not located, and those for which a search could not be conducted because no serial number was provided. Gov't Ex. F. Finally, the government submitted the

_____

[21]The declarations concern the following ATF offices: Charlotte, North Carolina (see Gov't Ex. B); Columbus, Ohio (Gov't Ex. C); St. Louis Field Office Groups I, II and III (Gov't Exs. H and L); and Kansas City (Gov't Ex. J).

Declaration of Special Agent Johnson, which states that he turned over the "entire case file" concerning petitioner's criminal case to the U.S. Attorney's Office. <u>See</u> Gov't Ex. K.

The government has submitted reasonably detailed declarations from ATF officials which describe the searches that took place pursuant to petitioner's subpoenas and document requests. The declarations appear to have been made in good faith and state that all responsive documents have been produced to petitioner, except for those identified on privilege logs or prohibited from disclosure by statute. These declarations, together with the privilege logs, appear to satisfy ATF's obligations pursuant to petitioner's subpoenas, and ATF and the government's obligations imposed by the Order.

The burden is therefore on petitioner to offer some evidence to show (1) a likelihood that the documents or recordings in fact he cites currently exist, as opposed to having existed at one time, (2) petitioner has issued subpoenas for these documents or recordings, and (3) the documents or recordings are being withheld. As stated in the Order, the government represents that some materials which might have been responsive to petitioner's subpoenas were destroyed years ago. Further, it appears petitioner obtained copies of some materials from third parties, such as Carmi's former defense counsel, that the government no longer possesses. <u>See</u> Order at 8, n.10.

Petitioner has received thousands of pages of ATF records in discovery as well as materials from third parties, and has taken numerous depositions in this matter. Petitioner offers speculation and argument about missing documents and records, but no evidence. Absent such a showing, the Court finds that ATF has complied with petitioner's subpoenas and requests directed to it, and that

the government has complied with the Order except to the extent it is being ordered to make additional discovery by the instant Memorandum and Order.[22]

## III. Conclusion

For the foregoing reasons, the Court finds the government has waived any privilege with respect to the documents produced on May 29, 2013 and listed on Government Exhibit I. Nonetheless, some of the documents produced on May 29, 2013 and listed on Exhibit I must be returned by petitioner because they are prohibited from disclosure as tax returns or return information pursuant to 26 U.S.C. § 6103. The Privacy Act, however, does not bar disclosure of any documents listed on Exhibit I.

The government is not required to produce any firearms transfer paperwork concerning Vic's Gun Corporation or ATF National Firearms Act records, as such production is prohibited by statute. The government need not produce ATF emails because they are not reasonably accessible and petitioner has not shown good cause for their production. Finally, the government will be ordered to prepare a proposed protective order concerning the confidential informant file on James Carmi, submit the proposed order to petitioner's counsel prior to filing it with the Court, and disclose the confidential informant file following entry of a protective order.

Accordingly,

**IT IS HEREBY ORDERED** that the government has waived any privileges associated with the documents listed on its privilege log, Government Exhibit I.

---

[22]Petitioner is free to question the government's witnesses at the evidentiary hearing concerning the records or recordings he alleges were not produced, and argue to the Court concerning the same.

**IT IS FURTHER ORDERED** that as to Documents 2, 4, 32, 36-38, 42, 43-49, and 55-58 listed on Government Exhibit I, petitioner shall (1) either return all copies of these documents to the U.S. Attorney's Office, or destroy them; (2) take reasonable steps to retrieve any copies of the documents that petitioner provided to anyone else; and (3) not use or disclose any information gained from these documents for any purpose.

**IT IS FURTHER ORDERED** that within ten (10) days of the date of this Order, petitioner shall file a notice with the Court, signed under penalty of perjury, that details his compliance with the foregoing order.

**IT IS FURTHER ORDERED** that the government shall submit a proposed protective order with respect to disclosure of the ATF Kansas City confidential informant file on James Carmi within ten (10) days of the date of this Order, and shall attempt to obtain petitioner's approval of the form of the proposed order prior to submitting it to the Court.[23]

**IT IS FURTHER ORDERED** that the government shall produce the confidential informant file on James Carmi to petitioner within five (5) days of the issuance of a protective order.


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this  3rd  day of June, 2015.

_____

[23]In addition to being electronically filed, a courtesy copy of the proposed protective order must be sent in a word processing format to the Court's proposed orders e-mail inbox, at MOED_Proposed_Orders@moed.uscourts.gov.  See Administrative Procedures for Case Management/Electronic Case Filing, § II. J.